C. WILLIS GOULD & another, executors, *vs.* HENRY CHAMBERLAIN & others.

Suffolk.    December 10, 1902. — September 2, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Devise and Legacy.    Evidence.*

On the issue of the interpretation of a codicil to determine whether certain legacies given by it were in addition to or in substitution for legacies given to the same persons by the will, evidence is admissible that the testator knew before the date of the will that he was living on a steadily diminishing principal and that his expenses annually exceeded his income, that after the execution of the will and before the execution of the codicil, when told by his attending physician how long he might live, he replied that in such case he would make greater

inroads upon his principal than he had expected to, and that twice before the execution of the codicil he consulted one or more of the persons named as his executors on the question whether his estate was sufficient to carry out the provisions of his will and said that he doubted whether it would be sufficient.

A *testator knowing that his property was diminishing and being in doubt whether it would be sufficient to carry out the provisions of his will, made a codicil beginning:* "My estate real and personal I bequeath as follows". *Then came various cash legacies corresponding to legacies in the will to the same persons, the language following that of the corresponding clauses in the will. A person given in the will $5,000, payable out of the first moneys in the hands of the executors was given by the codicil $3,000 thus payable and " the further sum of $2,000 which shall first appear to be a residue thereof." Six persons given $1,000 each in the will were given $800 each by the codicil, and three persons given $500 each in the will were given the same amount by the codicil. Other cash legacies in the will were not referred to in the codicil. The general scheme of the will tended to show that the testator intended the cash legacies to be paid from certain personal property which might have been insufficient for the purpose if the legacies given by the codicil were cumulative. On a bill for instructions it was held, that the legacies given by the codicil were in substitution for those given to the same persons by the will.*

BILL IN EQUITY, filed July 5, 1901, in the Probate Court for the County of Suffolk, by the executors under the will of Mellen Chamberlain, late of Chelsea, for instructions as to the construction and effect of a codicil to that will.

The testator died June 25, 1900, at the age of seventy-nine years. His wife had died on August 25, 1896. The will was dated March 26, 1900, and contained the following paragraphs:

" My estate real and personal, I give and bequeath as follows: To Mrs. John Whitman my faithful housekeeper, five thousand dollars to be paid to her out of the first moneys that shall come into the hands of my executors out of my estate, and without delay for the final settlement of my estate.

" To my brother in law, Hale E. Crosby, my brother Henry Chamberlain, both of Three Oaks, Michigan, and to my brother William Chamberlain, of said Michigan, I give each one thousand dollars ($1000).

" To Mrs. Mattie Fielding, daughter of my brother in law, John M. Putnam, to Miss Alice M. Putnam, niece of my late wife and to Mrs. Sarah W. Fuller, sister of my late wife, all of Danvers Mass. I give each the sum of one thousand dollars ($1000).

" To my name sake Mellen Chamberlain Hatch, son of Rev. George B. Hatch formerly of Chelsea, to Miss Mary A. Jenkins

formerly of the Boston Public Library, to Miss Elisabeth Porter Gould of Boston and to Miss Mary F. Colesworthy of Chelsea, I give each the sum of five hundred dollars ($500)."

Then followed bequests to the city of Chelsea of twelve volumes of real estate titles, real estate plans and a photograph, to the Massachusetts Historical Society of the manuscript of the testator's uncompleted history of Chelsea, with plans and copyright, and $5,000 for revision and completion of the work, to Dartmouth College of his library of printed volumes and $500 for binding and repairs, and to the Trustees of the Boston Public Library of his collection of manuscripts, except that given to the Historical Society, also autographs, portraits and photographs and certain papers, books and pamphlets. Then after gifts of certain pictures and other personal effects, not material, the will, omitting the attesting clause, concluded as follows:

"All legacies in this my will lapse with the death of the legatee. All the rest, residue and remainder of my estate including lapsed legacies, I direct my Executors to sell and dispose of at private sale, or at public auction, as they may deem for the interest of the estate. When said residue and remainder are reduced to money I direct my executors to divide them into nine equal parts and pay to the following parties: To Mrs. John Whitman aforesaid one part; to Pembroke Academy Pembroke, N. H. two parts; to the Third Congregational Church, Chelsea, two parts; to the Massachusetts Historical Society, two parts; to Dartmouth College, N. H. one part; to Mary F. Colesworthy, Mrs. Henry A. Tenney, Miss Elizabeth Porter Gould and Paul Mellen Chamberlain all aforesaid, each one fourth part."

The codicil was dated May 31, 1900. After naming an executor in substitution for one of those named in the will, it proceeded as follows:

"My estate real and personal I bequeath as follows:

"To Mrs. John Whitman my faithful housekeeper, Three thousand dollars to be paid to her out of the first monies that shall come into the hands of my executors or to my estate and without delay for its final settlement and the further sum of two thousand dollars which shall first appear to be a residue thereof.

"To my brother in law, Hale E. Crosby, my brother Henry Chamberlain both of Three Oaks, Michigan, and my brother

William Chamberlain of Jackson, said Michigan, eight hundred dollars each.

" To Mrs. Mattie Fielding, daughter of my brother in law, John M. Putnam, to Miss Alice M. Putnam niece of my late wife, and to Mrs. Sarah M. Fuller, sister of my late wife, all of Danvers, Massachusetts, the sum of eight hundred dollars each.

" To Miss Mary A. Jenkins formerly of the Boston Public Library, to Miss Elizabeth Porter Gould, of Boston, to Miss Mary F. Colesworthy of Chelsea, the sum of five hundred dollars each.

" To Miss Dora J. Murray, of Revere, the sum of one hundred dollars."

Here followed the attesting clause.

In the Probate Court *McKim*, J. made a decree to the effect that the testator never intended to revoke or change in any way the legacies in the will except those specifically mentioned in the codicil, and that the testator intended the legacies in the codicil to be substituted for the legacies given to the same legatees in the will. The heirs at law named as legatees appealed.

The case was heard by *Knowlton*, J. The heirs at law waived their contention made in the Probate Court that the codicil was a revocation of the will, and relied upon their further contention that the legacies to them, as well as the legacy to Mrs. Whitman, were cumulative.

It appeared that the testator's heirs at law were the defendants Henry and William Chamberlain, brothers of the testator, and his nephews, Henry C., Josiah B. and John A. Crosby. The defendant Mrs. John Whitman, at the time of the testator's death and for fifteen years preceding it, was his housekeeper and his friend. The defendants Mattie Fielding, Alice Putnam and Sarah W. Fuller were relations of the testator's wife. Mary A. Jenkins, Elizabeth Porter Gould and Mary Colesworthy were not relations of the testator. They were his friends, and were members of the local club to which he belonged. Dora J. Murray nursed the testator during his last illness. Mellen Chamberlain Hatch, mentioned in the will, was living at the date of the testator's decease.

At the time of the testator's decease his personal estate, including the manuscripts, was valued at $53,448, and his real

estate at $19,625. The collection of manuscripts given to the Boston Public Library by the will of March 26, 1900, was valued at $28,500. Substantially all the remainder of the personal property was in savings bank deposits, bonds and securities.

Against the objection and subject to the exception of the heirs at law, the other defendants were allowed to introduce evidence upon which the justice found, that on and after August 1, 1898, the testator, as he well knew, was living on a steadily diminishing principal, and that his expenses annually exceeded his annual income at the rate of $800 a year; that, subsequent to the execution of the will and prior to the making of the codicil, the testator's attending physician told him that with good care he would live through the summer of 1900 and probably into the fall, and that the testator replied that in such case he would make greater inroads upon his principal than he had expected to.

Against the objection and subject to the exception of the heirs at law, the other defendants introduced evidence tending to show that on two different occasions after the execution of the testator's will and before the execution of the codicil, he consulted one or more of his proposed executors upon the question whether his estate was sufficient to carry out the provisions of the will, and, against the objection and subject to the exception of the heirs at law, introduced evidence on which the justice found, that, on these two different occasions, after the execution of his will and before the execution of the codicil, the testator said that he doubted whether his estate was sufficient to carry out the provisions of his will.

There was no evidence tending to show, more definitely than as above stated, the dates of these conversations. The objections and exceptions of the heirs at law were made in each instance solely on the ground that the evidence objected to was not competent on the question of the interpretation of the codicil.

The justice reported the case for determination by the full court, concluding his report as follows:

"I find and report that it was the intention of the testator that the legacies given by the codicil to each of the heirs at law, and to Mrs. Whitman, should be substitutional and not cumulative, and in so finding I am materially influenced by the afore-

said evidence introduced under the objection and exception of the heirs at law.

" If there was error in admitting the evidence introduced, subject to the exception of the heirs at law, the order affirming the decree of the Probate Court that the legacies in question are not cumulative is to be reversed, and such disposition to be made of the cause by the full court as the law may require, unless the full court determines upon the will and codicil and evidence reported, so far as competent, that the decree of the Probate Court in this respect should be affirmed."

*B. B. Jones,* (*F. P. Cabot* with him,) for the heirs at law.

*J. Abbott,* (*S. Lincoln* with him,) for the Massachusetts Historical Society, the Trustees of the Boston Public Library and Dartmouth College.

MORTON, J.   This is an appeal from a decree of the Probate Court for Suffolk County upon a petition for instructions by the executors of the will of Mellen Chamberlain.   The single justice who heard the case affirmed the decree, and reported the case to this court for its determination.   The questions are whether certain legacies given in the codicil are cumulative or substitutional in respect of legacies given in the will to the same persons, and whether certain evidence admitted subject to the exceptions of the heirs at law was rightly admitted.   We take up the question of evidence first.

1. The evidence objected to was that the testator knew after August, 1898, which was before the date of the will, that he was living on a steadily diminishing principal, and that his expenses annually exceeded his income at the rate of $800 a year; that, subsequent to the execution of the will and prior to the execution of the codicil, he was told by his attending physician that with good care he would live through the summer of 1900 and probably into the fall, and that he replied that in such case he would make greater inroads upon his principal than he had expected to; and that twice after the execution of the will and before the execution of the codicil he consulted one or more of the persons named as his executors on the question whether his estate was sufficient to carry out the provisions of the will, and said on these occasions that he doubted whether his estate was sufficient to carry out the provisions of his will.

It is well settled that the situation and circumstances of a testator may be shown in order to enable the court to put itself as near as may be in his place and ascertain what he intended to express by the language used.  *Crocker* v. *Crocker*, 11 Pick. 252, 256.  *Popkin* v. *Sargent*, 10 Cush. 327, 330.  *Morse* v. *Stearns*, 131 Mass. 389.  *Boys* v. *Williams*, 2 Russ. & Myl. 689.  *Martin* v. *Drinkwater*, 2 Beav. 215.  If every word had only one meaning, and was incapable of being used or understood in any other sense, there would be no occasion for the introduction of such testimony.  But language is far from having such certainty, and hence the necessity that in order to correctly interpret it the court should understand the circumstances under which and in reference to which it was used.  A testator's declarations of his intentions are inadmissible, though logically they would seem to be the best evidence obtainable.  They are excluded, however, by reason of the statute, which requires wills to be in writing, and also of the rule that forbids the introduction of parol evidence to alter or vary written instruments.  In the present case the evidence that was admitted was not evidence of statements by the testator of his intentions, but was evidence tending to show a knowledge and appreciation on his part of his situation and circumstances and as such was clearly admissible.

2. The question whether the legacies in the codicil are to be regarded as cumulative or substitutional is one of intention.  In *Wainwright* v. *Tuckerman*, 120 Mass. 232, 238, it is said that, "When legacies are given by different instruments, the general rule is that the second is to be treated as additional to the first, in the absence of anything signifying a different intention ; but in this, as in all other questions of construction of testamentary instruments, the apparent intention of the testator must be the guide of the court."  See also *Bates, petitioner*, 159 Mass. 252, 257.  Taking into account the evidence of the statements of the testator and his knowledge of his circumstances it seems to us clear that the legacies in the codicil, so far as given to the same persons to whom legacies are given in the will, are to be regarded as substitutional, rather than as cumulative.  It is not reasonable to suppose that he could have intended those legacies to be in addition to the legacies already given when he had in effect expressed his doubts whether the estate was sufficient to pay the

legacies already given. The more natural interpretation of the codicil is that the testator intended it as the last and final expression of his purposes in regard to the persons named in it, and as taking the place as far as it went of the will. The codicil itself, it seems to us, bears out this construction. Although it begins by saying that it is a codicil to his last will and testament, and that is the general character of the instrument, it purports also to be a disposition of the whole estate, real and personal, of the testator, as is shown by the phrase, " my estate real and personal I bequeath as follows:", which is copied from the will. The reasonable explanation of this language is that the testator intended by it to signify that the legacies which follow were to be all that the several parties named were to receive out of his whole estate. Again, the language of the codicil is copied from corresponding clauses in the will, — and this has been held to indicate an intention to substitute in such cases the second legacy for the first. *Suisse* v. *Lowther*, 2 Hare, 424, 432. Moreover the words " out of the first monies that shall come to the hands of my executors " in the will and codicil, and the words " which shall first appear to be a residue thereof" in the codicil, which words are used in each instance in regard to the legacy to Mrs. Whitman, and the general scheme of the will tend to show, we think, that it was the intention of the testator that the savings bank deposits, bonds and other securities should constitute the fund from which the cash legacies should be paid. This intention would or might be defeated in part at least if the legacies given in the codicil are regarded as cumulative.

It is no doubt true, as the heirs at law contend, that a codicil revokes and changes a will only so far as the intention to do so is manifest. But as already observed, we think, that it was the intention of the testator to substitute the legacies given in the codicil for those given to the same persons in the will, and that this is manifest from the will and codicil and the evidence that was admitted. Very likely if it had occurred to the testator he would have said in so many words that the legacies given in the codicil were in substitution of those given in the will. But the fact that he did not do so, and that some of the cash legacies given in the will, including one to his namesake, are not referred to in the codicil does not necessarily show that the legacies in

the codicil must be regarded as cumulative in respect to those persons who are named in the will. If the case of *Wilson* v. *O'Leary*, L. R. 7 Ch. 448, relied on by the heirs at law, is to be regarded as laying down the rule as "a positive rule of law of construction," that "gifts by two testamentary instruments to the same individual are to be construed cumulatively," (p. 454) then all that need now be said of it is that that is not the law here. But even in England there are cases which hold, as we do, that the question is one of intention, (*Gillespie* v. *Alexander*, 2 S. & S. 145, *Martin* v. *Drinkwater*, 2 Beav. 215, *Fraser* v. *Byng*, 1 Russ. & Myl. 90,) and that where it appears that the second legacy was intended as a substitute for the first it will be so construed. Cases *supra*.

The result is that we think that the decree of the Probate Court should be affirmed.

*So ordered.*