KENNETH W. GUSTAFSON, executor, *vs.* HILDUR L. SVENSON,
executrix, & others
(and two companion cases[1]).

Barnstable. February 12, 1976. — May 28, 1976.

Present: KEVILLE, GRANT, & ARMSTRONG, JJ.

*Devise and Legacy,* Construction of particular phrase, Extrinsic evidence affecting construction. *Evidence,* Extrinsic affecting writing. *Words,* "Heirs per stirpes."

In proceedings to determine whether the widow of a beneficiary under two wills was entitled to take under residuary clauses leaving a share of the estates to the beneficiary "or his heirs per stirpes," extrinsic testimony concerning the testatrices' discussions with the attorney who drew the wills was inadmissible. [340]

Identical bequests by each of two sisters of a share of the residue of her estate to a brother "or his heirs per stirpes" were intended to go to his widow should he predecease them, where the design of the residuary clauses was to effect an equal distribution among surviving branches of the testatrices' family and where the brother and his wife were elderly and without issue when the will was written. [341-342]

TWO PETITIONS filed in the Probate Court for the county of Barnstable on December 21, 1973, and December 24, 1973, respectively.

BILL IN EQUITY filed in the Probate Court for the county of Barnstable on December 24, 1973.

The cases were consolidated for trial and heard by *Knight,* J.

*Michael J. Michaeles* for Kenneth W. Gustafson, executor.

*Charles R. Desmarais* for Hildur L. Svenson, & others.

[1] Anna Savage *vs.* Kenneth Gustafson, executor, and another (Probate Court no. 49252) and Kenneth Gustafson, executor, *vs.* Anna Savage and others (Probate Court eq. no. 397). The original appellant in all three cases was Martha Anderson. She died on January 14, 1975, and a single justice of this court allowed motions for substitution of Kenneth W. Gustafson, her executor, as the named appellant in her place, in each case.

ARMSTRONG, J. These cases, which were heard together in a Probate Court, turn on a single question concerning the proper construction of the wills of Hilda Anderson and Beda Anderson, unmarried sisters who lived together in Falmouth until their deaths within a few days of each other in December, 1972, and January, 1973. In 1959, they executed wills which were identical in all material respects except for the gifts to each other contained in the residuary clauses. Hilda's will named as residuary beneficiaries "the following or the survivors of them equally, share and share alike: (1) My niece, Agnes Norwood ... or her heirs per stirpes, one part, (2) My brother, Carl A. Anderson ... or his heirs per stirpes, one part, (3) My brother, Enoch J. Anderson ... or his heirs per stirpes, one part, (4) My sister, Beda J. Anderson ... if she survives me, one part, and (5) My sister, Anna Savage ... if she survives me, one part." Beda's residuary clause was identical except that the beneficiary named in the fourth subclause was Hilda.

The brother Enoch predeceased both Hilda and Beda. He left a widow, Martha, but no issue. Martha claimed that, as a statutory heir of Enoch, she was entitled to take under the third subclause of the respective residuary clauses. The Probate Court admitted in evidence extrinsic testimony concerning the testatrices' discussions with the attorney who drew the wills, and ruled that Martha was not entitled to take. The cases are before us on appeals by Martha.

The phrase "per stirpes" means, literally, by the roots, or by stocks; it imports the taking by the descendants of a deceased heir of the same share in the estate of another person as their parent would have taken if living. Newhall, Settlement of Estates § 222 (4th ed. 1958). The words "heirs per stirpes" thus carry a suggestion that only blood heirs are intended to be included. *In re Moffitt's Will*, 171 Misc. 84, 85 (N. Y. Surr. Ct. 1939), aff'd mem. 283 N. Y. 743 (1940). *Stevenson Trust*, 80 D. & C. 591, 594-595 (Pa. Orphans' Ct. 1952). The implication is not conclusive, however: in *Sweeney* v. *Kennard*, 331 Mass. 542 (1954), it

was held that a widow might take under a bequest to her deceased husband or his "heirs by right of representation," words which are generally thought to be indistinguishable in legal effect from the words "heirs per stirpes".

The question to be decided, therefore, is whether the words "Enoch ... or his heirs per stirpes" were meant to include Enoch's blood heirs only or, alternatively, whether they were meant to include all his heirs, either by blood or by statute, with the manner of their taking to be per stirpes. In determining the testatrices' meaning, we follow the "fundamental rule for the construction of wills [, which] is to ascertain the intention of the testator from the whole instrument, attributing due weight to all its language, considered in the light of circumstances known to him at the time of its execution and to give effect to that intent unless some positive rule of law forbids." *Fitts* v. *Powell,* 307 Mass. 449, 454 (1940). *Putnam* v. *Putnam,* 366 Mass. 261, 266. On the other hand we must disregard the testimony pertaining to their instructions to their attorney and their expressions to him concerning their intention, as that testimony was improperly admitted in evidence. *Gould* v. *Chamberlain,* 184 Mass. 115, 121 (1903). *Saucier* v. *Saucier,* 256 Mass. 107, 110 (1926). *Calder* v. *Bryant,* 282 Mass. 231, 239 (1933). *Mahoney* v. *Grainger,* 283 Mass. 189, 191-192 (1933). *Boston Safe Deposit & Trust Co.* v. *Prindle,* 290 Mass. 577, 581-582 (1935). *Watson* v. *Goldthwaite,* 345 Mass. 29, 33 (1962). "With the exception of cases in which language is used which seems intelligible and consistent, but which applies equally to two or more persons or things, evidence of [a] testator's direct declarations of intent, whether made before or after the will, including his instructions to the scrivener, and including declaration at the time of execution, ... are inadmissible to show [the] testator's actual intention, apart from, in addition to, or in opposition to the legal effect of the language which is used by him in the will itself." Page, Wills § 32.9 (Bowe-Parker rev. 1961).[2]

---

[2] We do not think that the recent case of *McKelvy* v. *Terry,* 370 Mass. 328, 334-335 (1976), was intended to be authority to the con-

When Hilda and Beda executed their wills in 1959, the only other members of their immediate family still living were Carl, who was a widower and had four children; Enoch, who was married and had no children; and Anna (Savage), who was a widow and had no children. An older brother, John Emil, had apparently died young leaving no wife or children. An older sister, Levina, had died in 1913 and was survived by one child, Agnes (Norwood), who was married and had one child. It is thus apparent that the residuary clauses of the two wills were intended to effect an equal distribution of each residuary estate among the surviving branches of Hilda's and Beda's immediate family, each branch being determined by a separate sibling.

The testatrices conditioned the gifts to certain of the sibling branches on survivorship. The gifts to Beda and Hilda themselves, in each other's wills, were so conditioned, as was the gift to Anna (Savage). In 1959 these three sisters were 82, 77, and 74, respectively; except for the remote possibility of marriage, or in Anna's case, remarriage, it was unlikely that any would be survived by a spouse or issue. Three of the gifts were not conditioned on survivorship: those to Carl, Enoch, and Agnes (Norwood) were given to them or their "heirs per stirpes". It is plain that in those three branches the testatrices contemplated that the named beneficiary might be survived by heirs in his or her own branch of the family, and intended that those heirs should take in any instance where the named beneficiary should predecease the testatrices.

Carl and Agnes (Norwood) each had issue who could take their respective shares as lineal descendants if Carl or

trary: in that case, the bulk of the testimony concerning the conversation between the testator and the New York attorney was admissible for the purpose of showing the testator's knowledge of the existence of the power of appointment, his feelings towards and relation to his children, and his state of mind concerning his own father's having deprived him of outright ownership of the appointive property. Such evidence of "the circumstances existing and known to a testator", and his "state of feelings towards or relation to the claimants", has been held to be admissible in such cases as *Boston Safe Deposit & Trust Co.* v. *Prindle,* 290 Mass. 577, 581-582 (1935) (cited in the *McKelvy* case), and the cases therein cited.

Agnes predeceased the testatrices. Enoch had no lineal descendants, and it was not likely in 1959, when the wills were executed, that he would ever have such, for he was then 79 and his wife Martha was 74. As the gift to Enoch's branch was to survive his death in order that the heirs in his own branch might take, and as there did not appear to be anyone in Enoch's branch other than Martha who might become his heir, it seems manifest that Martha was intended to take in the event of Enoch's death. We therefore conclude that the words "or his heirs per stirpes" were, in the case of Enoch's branch, intended by the testatrices to include Martha among Enoch's heirs at law as determined under the provisions of G. L. c. 190, § 1, and that the manner of taking of the heirs so determined was to be by right of representation.

The judgments in Probate Court eq. nos. 396 and 397 are reversed. The final decree in Probate Court no. 49252 is reversed. The cases are remanded to the Probate Court for further proceedings not inconsistent with this opinion.

*So ordered.*