CHESTER K. GILMAN, administrator with the will annexed, *vs.* CONGREGATIONAL HOME MISSIONARY SOCIETY.

Suffolk. May 18, 1931. — September 11, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Devise and Legacy,* Remainder, "Heirs at law." *Words,* "Heirs at law," "Only," "Then."

A testator died in 1894 leaving as his sole heir a daughter, who then had two children. His will and a codicil gave the residue of his estate to his daughter "for and during the term of her natural life only" to apply the income for her maintenance and support with authority in her discretion to apply the whole or any part of the principal for the same purposes; "said rest and residue" to be given on her death to her children or their issue living at her death and,

if she died leaving no issue, "then . . . her present husband" was to hold the "said rest and residue . . . for and during the term of his natural life only," and at his death, or at the death of the daughter if she survived her husband and died without issue, "then and in such case said rest, residue and remainder of my estate is to go to my heirs at law. . . ." The daughter died in 1929, testate, leaving no husband nor issue surviving her. Upon a petition in the Probate Court for distribution, a decree was entered directing distribution among those who would have been the testator's heirs at law had he died immediately after the daughter. A legatee under the will of the daughter appealed. *Held,* that

(1) The will contained nothing indicating that the words "heirs at law" as descriptive of the ultimate beneficiaries of the testator's bounty in the stated contingency were used in any sense different from their usual meaning of persons determined to be such as of the date of the death of the testator;

(2) The decree of the Probate Court was reversed and distribution was ordered among the legatees under the will of the daughter.

PETITION, filed in the Probate Court for the county of Suffolk on November 18, 1930, by the administrator with the will annexed of the estate of Friend Tilden, late of Boston, for distribution, the petitioner alleging that, if the balance of the estate in his hands passed under the will of Mary C. Donely, the respondent Congregational Home Missionary Society should receive one half thereof and eight other individuals one sixteenth each; but, if distribution should be made to heirs of the testator ascertained as of the death of Mary C. Donely and not as of the death of Friend Tilden, it should be among thirty-six individuals in shares ranging in size from one one thousand and eighth to one sixth.

The petition was heard by *Dolan,* J., by whose order there was entered a final decree ordering distribution among the thirty-six individuals.

The Congregational Home Missionary Society appealed.

*S. R. Wrightington,* stated the case.

*H. S. Davis,* for Congregational Home Missionary Society.

*E. O. Proctor,* (*V. W. Marr* with him,) for Norman L. C. Gay and others.

RUGG, C.J. The testator, Friend Tilden, died in 1894. He had been a widower for more than twenty years and

left as his sole heir at law a daughter, Mary C. Donely, wife of John E. Donely. At the death of her father she had a son and a daughter, but both predeceased her, as did also her husband. In 1929 she died without issue. By his will, dated in 1886, in the eighth clause, the testator gave the residue of his estate to his daughter "for and during the term of her natural life only, she to apply the income arising from the same, for her maintenance and support" and, as enlarged by a codicil, gave her "full power and authority to apply the whole or any part of the principal . . . to her own use and behoof, for her support and maintenance or otherwise, and as in her judgment only, she may deem it expedient so to do." It was provided in clause ninth: "At the decease of my said daughter, I give devise and bequeath, said rest and residue . . . to the children of my said daughter, living at the time of her said decease, or the issue of any deceased child, so living, by right of representation . . . in case at the death of my said daughter, she leaves no issue or the issue of any deceased child, living, then . . . her present husband . . . John E. Donely . . . is to hold said rest and residue . . . for and during the term of his natural life only — . . . and at his decease, all said rest, residue and remainder . . . is to go to my heirs at law . . . but if said John E. Donely is not living, . . . at the time of her said decease, and she dying in manner aforesaid, then and in such case said rest, residue and remainder of my estate is to go to my heirs at law . . . ." The question for decision is whether by these words the testator meant, in the events which have come to pass, a gift to his heirs at law or a gift to those who would be his heirs at law if he had died a moment subsequent to the decease of his daughter. If he meant the former, the residue of his estate will pass under the will of his daughter; if the latter, it will be divided in different shares among thirty-six persons who would be his heirs if he had died after the death of his daughter.

"Ordinarily the heirs of a person are to be ascertained at the time of his death. In a popular as well as in the

strictly accurate sense, heirs mean those who take an estate of inheritance in the property of a person at the time of his death. *State Street Trust Co.* v. *Sampson,* 228 Mass. 411, 413. *Boston Safe Deposit & Trust Co.* v. *Stratton,* 259 Mass. 465, 477." *Waverley Trust Co., petitioner,* 268 Mass. 181, 183. *Abbott* v. *Bradstreet,* 3 Allen, 587, 589. *Whall* v. *Converse,* 146 Mass. 345, 348. *Sherburne* v. *Howland,* 239 Mass. 439, 442. This meaning of the word "heirs" is usually followed in the interpretation of wills for several reasons. People are presumed to use words in the sense given them by the common and approved usage of the language. Those who would be the heirs of a person at any other time than his death constitute an artificial creation and not a recognized class. It would be simple for a testator to say that a distribution is intended among those who would be his heirs if he had died at the happening of some future event, or among those of his heirs surviving at some future date, or among his heirs excluding some particular person or persons or branch, if such were his purpose. A testator usually resorts to the word "heirs" to express the objects of his bounty after having exhausted his specific wishes and is content otherwise to let the law take its course. It has been often said that the law favors the creation of vested rather than contingent estates. Nevertheless the aim in every case involving the interpretation of wills is to ascertain the intent of the testator from the whole instrument and then to give effect to that intent unless prevented by some positive rule of law. Therefore, if the word "heirs" is used clearly in some sense different from its correct meaning, or as indicating some restriction upon that class, that meaning will be given effect. *Wood* v. *Bullard,* 151 Mass. 324, 333. *White* v. *Underwood,* 215 Mass. 299. *Welch* v. *Howard,* 227 Mass. 242. *Carr* v. *New England Anti-Vivisection Society,* 234 Mass. 217. There are also cases where an inconsistency with other parts of the will would arise by attributing the accurate signification to the word "heirs." Cases of this nature always present difficulties. *Welch* v. *Brimmer,* 169 Mass. 204. *Heard* v. *Read,* 169 Mass. 216, 224. *Brown* v. *Wright,*

194 Mass. 540. *Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass. 35. These decisions establish no different principle although in some there was diversity of view among the members of the court in its application. The fact that the life tenant may be one of the heirs at law, or even the sole heir at law, is not such an incongruity as to prevent the usual meaning of the word from being applicable. *Keating* v. *Smith*, 5 Cush. 232, 236. *Blume* v. *Kimball*, 222 Mass. 412. *Rand* v. *Butler*, 48 Conn. 293. *Ware* v. *Rowland*, 2 Phil. Ch. 635. It is a circumstance to be weighed with all relevant factors in ascertaining the testamentary design.

In the case at bar there seems to us to be no words indicating that the words "heirs at law" as descriptive of the ultimate beneficiaries of the testator's bounty in the stated contingency were used in any sense variant from their correct meaning. The words of gift of the life estate to the daughter "for and during the term of her natural life only" show simply the duration of the estate then being created. They are not words of restriction and limitation touching the rest of the will. The same words are used respecting the life estate to her husband. He could by no possibility take under any other clause of the will. The word "only" at the end of the phrase giving a life estate to the daughter in its context neither enlarges nor diminishes the nature of that estate; it falls short of disclosing a purpose that that is the entire extent of her possible benefaction under the will. Compare *Mullaney* v. *Monahan*, 232 Mass. 279. At the time the will was framed and at the death of the testator he had two grandchildren, children of his daughter. Looking at the will as a whole it is manifest that while he wanted his daughter to be well supported out of his estate, the chief concern of the testator was to conserve the principal so far as practicable for the benefit of his grandchildren. In the natural course of events it hardly would be expected that both would predecease their mother. Whatever emphasis rightly may be attributed to the word "only," it cannot be thought to have been intended to be operative against the daughter and in favor of indeterminate heirs

at law not to be defined until after her death. As a part of the entire instrument it is at most a word of admonition to the daughter with respect to her children.

Cases have arisen where the word "then" in relation to other parts of the will has been held to disclose a purpose that the members of a class of distributees are to be ascertained as of the date of the death of the life tenant. See, for example, *Wood* v. *Bullard,* 151 Mass. 324; *Carr* v. *New England Anti-Vivisection Society,* 234 Mass. 217. In the case at bar the word "then" in the phrase "then and in such case" has no such significance. It is not descriptive of the time when the heirs of the testator are to be ascertained. Its relation to that which goes before and that which follows is purely conjunctive denoting the time and occasion for distribution. *Dove* v. *Torr,* 128 Mass. 38, 40. *Boston Safe Deposit & Trust Co.* v. *Parker,* 197 Mass. 70, 73. *Brown* v. *Spring,* 241 Mass. 565, 568. See *Childs* v. *Russell,* 11 Met. 16, 24; *State Street Trust Co.* v. *Sampson,* 228 Mass. 411, 413.

The use of the words "heirs at law" instead of "heir at law" is of slight importance as indicating that heirs are to be determined at the death of the life tenant. *Welch* v. *Brimmer,* 169 Mass. 204, 213.

The circumstance that the life tenant had the power to draw from the principal does not disclose an intention to exclude her from the class of heirs. *Ball* v. *Hopkins,* 254 Mass. 347. *Crowell* v. *Chapman,* 257 Mass. 492. The case at bar is distinguishable on this point from *Fargo* v. *Miller,* 150 Mass. 225. Reading clauses eighth and ninth of the will with the rest of the instrument apart from the authority of decided cases and with a purpose to get at the intention of the testator as disclosed by the words used in the light of the material family conditions existing at the date of the will and at the time of his death, it seems to us that the testator used the words "heirs at law" in their usual and correct meaning, that it would not defeat his intent to give them that meaning, and that it can hardly be supposed that he intended to create, when his daughter died more than a third of a century after his own death, a special and arti-

ficial class of beneficiaries, rather remote kindred, instead of the class constituting his heirs, even though the daughter was his sole heir.

The case at bar falls within the class of cases illustrated by *Blume* v. *Kimball*, 222 Mass. 412, *Crowell* v. *Chapman*, 257 Mass. 492, *Thompson* v. *Clarke*, 264 Mass. 56, and *Old Colony Trust Co.* v. *Sullivan*, 268 Mass. 318, rather than within *Heard* v. *Read*, 169 Mass. 216, and *Brown* v. *Wright*, 194 Mass. 540.

It follows that the decree must be reversed and a decree entered on the footing that the words, "heirs at law" in clause ninth of the will mean the one answering that description at the death of the testator.

*Ordered accordingly.*