WALTER CALDER & others, trustees, *vs.* WALLACE BRYANT
& others.

Plymouth.   December 12, 13, 1932. — February 23, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Trust*, Construction of instrument creating trust. *Devise and Legacy*,
   Remainder, "Heirs," Time of vesting. *Evidence*, Competency.
   *Words*, "Heirs."

At the time when a testator made his will, he had a wife and daughter
   with whom he lived, the daughter being forty-nine years of age and
   unmarried; and a son thirty-seven years of age, married to a woman
   twenty-seven years of age.   There also were descendants of two de-
   ceased brothers of the testator, and he was on friendly terms with his
   nieces and nephews.   The testator did not like his wife's relatives.
   By the will, the testator, after making legacies and devises to his wife
   and children, gave the residue to a trustee to pay two thirds of the
   income to his widow and one third thereof to his daughter during
   their lives, and, in case the daughter should die before the widow, to
   pay one third thereof to the son during the widow's life; and, after
   the death of the widow and daughter "to pay over and deliver over
   all my estate to my heirs, free of all trusts, hereby intending that my
   said son . . . shall take a vested remainder hereunder."   The widow,
   the son and the daughter all survived the testator.   The son died
   first, the daughter next and the widow last.   Upon a petition for in-
   structions by the trustee after the widow's death, it was *held*, that
      (1) In the circumstances, it was plain that the gift of the entire
   income to the widow and daughter during their lives was the entire
   provision which the testator intended to make for them from the
   residue, and that he did not intend to give either of them any interest
   in remainder;
      (2) Although the language of the will was obscure and there were
   some factors to support a construction that the testator intended
   that his more remote heirs, those who would have been his heirs had
   he died immediately after the widow's death, should share the interest
   in remainder with the son, sufficient did not appear in all the circum-
   stances to take the case out of the general rule that the testator's heirs
   were to be determined as of the time of his death;
      (3) The circumstance that the testator used the plural word "heirs"
   rather than the word "heir" was of only slight importance, and did
   not prevent a construction whereby the entire interest in remainder
   would vest in the son;
      (4) There was no merit in a contention that, in view of the omission
   from the will of any words of present gift to the testator's heirs, it

was his intention that title to the interest in remainder should not vest until the time for distribution thereof should have arrived;

(5) The estate of the son was entitled to the entire interest in remainder;

(6) It was proper to exclude testimony as to conversations, at the time of the drawing of the will, between the draftsman of the will and the son of the testator and between the testator and the draftsman, wherein the testator approved the suggestion of the draftsman to insert the phrase, "hereby intending that my said son . . . shall take a vested remainder hereunder,"·to remedy an objection by the son that the will without that phrase did not provide for his family if he failed to survive his mother and sister, and should be changed, the change being intended to give the son a vested remainder in one third of the estate: such testimony did not refer to circumstances known to the testator or to his relations with his relatives, but referred to his interpretation of the words of his will and his intention respecting the disposition of his property.

PETITION for instructions, filed in the Probate Court for the county of Plymouth on September 24, 1931, and afterwards amended, by the trustees under the will of Bradley S. Bryant, late of Marshfield.

The petition was heard by *L. E. Chamberlain,* J., a stenographer having been appointed under statutory provisions. Material facts and portions of the will, and a decree entered by order of the judge, are described in the opinion. Certain respondents appealed.

*G. P. Bryant,* stated the case.

*R. R. Duncan,* (*H. B. Hosmer* with him,) for Georgia Chipman and another.

*J. W. Spring,* (*F. A. Turner* with him,) for George Phillips Bryant and others, executors.

*T. H. Buttimer,* for Sara Bryant Borst and others.

*W. B. Grant,* for Wallace Bryant and others.

*J. G. Bryer,* for William Thomas Bryant and others, submitted a brief.

CROSBY, J. This is a petition by the trustees under the will of Bradley S. Bryant for instructions respecting its interpretation and construction. The testator died on July 3, 1918, having executed his will one week before that date. He was survived by his wife, Sarah J. Bryant, a daughter, Edith Eliza Bryant, and a son, B. Franklin W. Bryant.

By the will $2,000 was given outright to the widow and

she received the homestead and contents during her life; $1,000 is given to his daughter and $1,000 to his son. The residue of his estate was given to trustees: two thirds of the net income to be paid to the widow, and one third of the net income to the daughter during their lives. If the daughter died before the widow then "two thirds of the said income shall be paid to my said wife and one third of the net income shall be paid to my said son during the lifetime of my wife." Then the clause which is the subject of this petition for instructions appears. It is as follows: "After the death of my wife and daughter my trustees are to pay over and deliver over all my estate to my heirs, free of all trusts, hereby intending that my said son Franklin shall take a vested remainder hereunder." Franklin predeceased both the widow and daughter, leaving a widow, Georgia, now the wife of J. M. Chipman, but no issue; the daughter died next, and then the widow on June 12, 1931. There are three sets of claimants to the rest and remainder of the estate: namely, (1) Georgia Chipman, the administratrix of Franklin's estate, who claims the entire remainder on the ground that "heirs" in the above quoted clause must be interpreted as meaning heirs at the death of the testator exclusive of the life tenants; (2) the executors of the will of the daughter, Edith E. Bryant, who contend that the word "heirs" means heirs at the death of the testator, and that the estates of the widow, the daughter and the son each had a vested remainder in one third of the testator's estate; and (3) the children, grandchildren, and great grandchildren of two deceased brothers of the testator, who contend that "heirs" means heirs at the time of distribution, that Franklin's estate had a vested remainder in one third of the estate, and that the other two thirds should be distributed among those who would be the heirs of the testator if he had died immediately after the last surviving life tenant.

At the hearing before the Probate Court, which is reported in full, there was evidence given by two witnesses, George Phillips Bryant, a nephew of the testator and one of the petitioners, who drew the will, and Georgia Chip-

man. The judge filed findings and rulings, and a decree was entered ordering that one third of the remainder of the estate be paid to the persons entitled to the estate of Franklin, and that the remaining two thirds be distributed in stated proportions to those persons who would be the testator's heirs had he died immediately after the last surviving life tenant. From this decree Georgia Chipman, individually and as administratrix of the estate of B. Franklin W. Bryant, the executors of the will of Edith E. Bryant, and the descendants of one of the testator's brothers appealed.

"The cardinal rule in the interpretation of wills, to which all other rules must bend, is that the intention of the testator shall prevail, provided that it is consistent with the rules of law." *McCurdy* v. *McCallum*, 186 Mass. 464, 469. *Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass. 35, 38. *Gilman* v. *Congregational Home Missionary Society*, 276 Mass. 580, 583. The question whether the heirs are to be determined at the death of the testator, or at the death of the last surviving life tenant depends upon the intention of the testator as expressed in his will. It is plain that it was his intention to exclude his wife and daughter from participation in the remainder. The fact that both must have deceased before final distribution is some evidence of such an intention to be considered with other circumstances. *Welch* v. *Howard*, 227 Mass. 242, 246. *Gilman* v. *Congregational Home Missionary Society*, 276 Mass. 580, 584. At the time the will was executed the daughter was forty-nine years old and unmarried. It is a reasonable inference that the testator anticipated that she would die without children. Adequate provision was made for her during her life. It seems probable in these circumstances that the testator did not intend that she should share in the remainder of his estate. It was said in *White* v. *Underwood*, 215 Mass. 299, at page 301: "More conclusive is the fact that the testator by implication excludes the heirs and devisees of his daughter Anna from taking any interest in the remainder after her life estate. For it seems clear to us that the testator intended to exclude

them.  Anna M. was a single woman and forty-nine years
of age when her father died.  He undoubtedly anticipated
that she would die unmarried or without children."  In
the case at bar the testator's wife would unquestionably
have no more children, and if it was intended to give her a
vested remainder it must have been for the purpose of
benefiting her relatives, or others than herself.  There was
evidence that the testator did not like his wife's relatives.
This evidence was admitted as part of the circumstances
in connection with the making of the will.  "Extrinsic
evidence of the conduct and the declarations of the testator
is competent.  They are not to be deemed direct proof of tes-
tamentary intention, but as showing the testator's relation to,
and state of feelings towards, any of the respective claim-
ants."  *Morse* v. *Stearns*, 131 Mass. 389, 390.  *Kingman*
v. *New Bedford Home for Aged*, 237 Mass. 323, 326.  If
this evidence had been excluded there was other evidence
which plainly showed that the testator intended to exclude
his wife and daughter from participating in the remainder.
After the direction that the trustees "pay over and deliver
over" the remainder of his estate to his heirs, is added,
"hereby intending that my said son Franklin shall take a
vested remainder hereunder."  The omission of his wife
and daughter in this clause of the will is significant and
cannot be ignored.  If he had intended that the heirs be
determined as of the time of his death and that his wife
and daughter should share in the remainder, there could
be no reason for providing that Franklin should have a
vested remainder.  When the will was executed the testa-
tor and his wife and daughter lived together.  His son, who
was married and lived in Virginia, was thirty-seven years
old and married to a woman twenty-seven years old.  The
testator might reasonably expect that Franklin would have
children.  The will plainly indicates that the testator by
providing that the entire income from his property should
be received by his widow and daughter during their lives
intended that they should be adequately supported.  He
doubtless realized that his son, being a comparatively young
man, was able to support himself and family.  Accordingly

he provided that the trustees were directed to pay two thirds of the net income to his widow and one third to his daughter during their lives, and after the death of his widow two thirds of the net income was to be paid to the daughter and one third was to be paid to his son during the lifetime of the daughter. It thus appears that if the wife and daughter should die at approximately the same time Franklin would receive no part of income. The only beneficiaries expressly named in the will are the testator's wife and two children. It is unreasonable to assume that he intended that any of his estate should go to collateral kindred, or by wills of the wife or daughter during the lifetime of Franklin. If he had not thought that Franklin was to take the entire remainder of his property after the death of his wife and daughter, it is reasonable to suppose that he would have given Franklin at least a life estate in the whole after the death of the widow and daughter, and that his collateral kindred would not take until after Franklin's death. It seems obvious that under the provision of the will in question he intended that after the death of the widow and daughter his son should take a vested remainder in all his property. There was evidence that he had stated that he did not want any of his wife's relatives ever to have any part of his property.

The question remains as to when the heirs of the testator should be determined, at his death or at the death of his wife. When a testator leaves property to his "heirs" or "heirs at law" it is presumed that he intended to describe those persons who are his heirs at the time of his death, unless it clearly appears that he intended they are to be ascertained as of another time. *Heard* v. *Read,* 169 Mass. 216, 222. *Waverley Trust Co., petitioner,* 268 Mass. 181, 183. *Gilman* v. *Congregational Home Missionary Society,* 276 Mass. 580. *Boston Safe Deposit & Trust Co.* v. *Waite,* 278 Mass. 244, 248. In *Heard* v. *Read,* it was said that the reason for this rule is that heirs by the very meaning of the word are those persons who take inheritable real property immediately on the death of the owner if he dies intestate. See also *Gilman* v. *Congregational Home*

*Missionary Society*, 276 Mass. 580, 583. The cases are
uniform in holding that it must plainly appear that the
testator intended heirs to be determined at some other
time in order to take the case out of the general rule. It
is settled that in the absence of a plain intention shown by
the will to the contrary, a gift of a remainder to the heirs
of the testator is a vested remainder in a class to be de-
termined at the death of the testator, and that a gift to
heirs or heirs at law of a testator will be construed as re-
ferring to those who are his heirs at the time of his de-
cease. *Abbott* v. *Bradstreet*, 3 Allen, 587, 589. *State Street
Trust Co.* v. *Sampson*, 228 Mass. 411. *Gilman* v. *Congre-
gational Home Missionary Society*, 276 Mass. 580. "Heirs"
are those persons who would take the testator's property
had he died intestate. *State Street Trust Co.* v. *Sampson*,
228 Mass. 411, 412. It was said in *Gilman* v. *Congrega-
tional Home Missionary Society*, 276 Mass. 580, at 585–
586: ". . . it can hardly be supposed that he [the testa-
tor] intended to create, when his daughter died more than
a third of a century after his own death, a special and
artificial class of beneficiaries, rather remote kindred, in-
stead of the class constituting his heirs, even though the
daughter was his sole heir." In the case at bar it does not
plainly appear that the testator meant heirs as determined
at the decease of the last life tenant. Although the case
is not free from difficulty there are several facts which sus-
tain the result reached by the Probate Court on this ques-
tion. There was evidence that the testator's nephew
George Phillips Bryant and his brothers and sisters visited
the testator occasionally and that their relations with the
testator were friendly, and it is natural that he should
desire to make some provision for them after providing for
his wife and children. It may seem strange that he should
use such obscure language if he intended the entire estate
to go to his son Franklin or his heirs on the death of the
last life tenant. But these considerations are not sufficient
to take the case out of the general rule.

It has been argued, and was referred to by the judge of
probate as bearing on his decision, that the use of the

plural word "heirs" rather than "heir" indicates an intent that the heirs are to be determined at the time of distribution, since Franklin was the only heir at the time of the testator's death except his wife and daughter. This circumstance however is of slight importance. In *Minot* v. *Harris*, 132 Mass. 528, 533, it was held that the use of the plural word "heirs" does not prevent one individual from taking the entire gift. It has been held specifically that one individual may take a remainder, although the gift is to "heirs." *Welch* v. *Brimmer*, 169 Mass. 204. *Gilman* v. *Congregational Home Missionary Society*, 276 Mass. 580, 585.

It is argued that as there are no words of present gift in the will; that as there is only a direction that the trustees "pay over and deliver" to the heirs, it was the intention of the testator that the title should not vest in the remaindermen until the time of distribution. See *White* v. *Underwood*, 215 Mass. 299, 301, 302, and cases cited. Although such an inference might be drawn if the clause had ended with the direction to pay over, the provision that Franklin is to take a "vested remainder" prevents such an inference. The remainder to him vested at the death of the testator. To construe the will that Franklin had a vested remainder in one third of the remainder, and the other two thirds were suspended over the life estates and vested at the time of distribution is a construction which reads into the will what cannot be found there. It is nowhere provided that Franklin is to receive only one third of the remainder. It does not appear that the testator intended that heirs be determined at any time other than at the date of his death. We are of opinion that the estate of Franklin is entitled to the whole of the remainder, exclusive of the estates of the wife and daughter. *Brown* v. *Lawrence*, 3 Cush. 390. *Minot* v. *Harris*, 132 Mass. 528. *In re Carter*, 99 Vt. 480, 489.

Exceptions were taken to the exclusion of certain evidence offered at the hearing relating to conversations between the witness George P. Bryant, who drew the will, and the testator's son, and between this witness and the

testator. There were several offers of proof wherein it was stated that while the will was being drawn and before it had been completed, Franklin arrived at his father's house; that at that time the clause of the will in question then ended with the word "trusts"; that Franklin talked with the witness and said that the will as it was drawn did not provide for his family if he failed to survive his mother and sister, and should be changed; that the witness suggested adding the words "hereby intending that my said son Franklin shall take a vested remainder hereunder"; that thereafter the witness had a conversation with the testator in which he repeated his talk with Franklin, and the testator said that it was perfectly satisfactory to him that Franklin should have a vested remainder in one third of his estate, and that the suggested phrase might be incorporated in the will. The offers of proof were excluded. We are of opinion that the proffered evidence was rightly excluded. Although the circumstances existing and known to a testator when he made his will are admissible in evidence, *Lydon* v. *Campbell*, 204 Mass. 580, 585, yet his declarations of what he intended by language used in his will are inadmissible. *Sibley* v. *Maxwell*, 203 Mass. 94. *Saucier* v. *Saucier*, 256 Mass. 107. The offers of proof did not refer to circumstances known to the testator or to his relations with the claimants, but referred to his interpretation of the words of his will, and his intention respecting the disposition of his property. Such evidence was clearly incompetent and was rightly excluded. *Saucier* v. *Saucier*, 256 Mass. 107, and cases cited. The evidence which was held admissible in *Morse* v. *Stearns*, 131 Mass. 389, *Lydon* v. *Campbell*, 204 Mass. 580, *Kingman* v. *New Bedford Home for Aged*, 237 Mass. 323, and similar cases relates to evidence different in character from that here excluded.

We are of opinion that, from the terms of the will and all the circumstances, the life estate given to his wife and daughter was the extent to which the testator intended to provide for them, and that his son had a vested interest in the entire remainder; and that as the son has deceased his estate is entitled to such remainder. The part of the

decree which provides that two thirds of the trust fund should be distributed among those who were the testator's heirs at the date of the death of the widow is reversed, and a decree is to be entered providing that the entire trust estate now in the hands of the trustees be delivered to those entitled to the estate of B. Franklin W. Bryant. Georgia Chipman, administratrix of the estate of B. Franklin W. Bryant, is to be paid costs of this appeal; and costs as between solicitor and client are to be determined by the Probate Court.

*Ordered accordingly.*