BOSTON SAFE DEPOSIT AND TRUST COMPANY, trustee, *vs.*
FRANCES CARRUTH PRINDLE & others.

SAME *vs.* SAME.

Suffolk. Middlesex. March 5, 25, April 10, 1935. — May 1, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Devise and Legacy*, Power, Extrinsic evidence affecting construction.
*Power. Evidence*, Competency, Extrinsic affecting writing.

Statement by PIERCE, J., with respect to the consideration of extrinsic
evidence in the construction of a will.

A general power of appointment by will over the principal of a trust
was not exercised by a clause of the will of the donee in which, without
specific reference to property over which he had power of appoint-
ment, he gave the residue of his personalty to two persons "to be
divided equitably among the members of . . . [certain] families as
they may in their uncontrolled discretion decide," where it appeared
from another clause of the will and otherwise that he clearly under-
stood the distinction between his own property and property over
which he had the power of appointment and knew how to use lan-
guage appropriate to a specific exercise of the power, and there was
nothing in the instrument creating the trust and conferring the power
to indicate that he was entitled to delegate the exercise of the power;
nor was the power exercised by a clause of the donee's will in which
he gave pecuniary legacies aggregating a sum which, to his knowl-
edge, was about twice as large as the value of his own property at
the time the will was made, but somewhat less than the then com-
bined values of his own property and of the principal of the trust;
nor was the power exercised by the will as a whole.

It is settled in this Commonwealth, *prima facie*, that a person with a
power of appointment is not entitled to delegate the exercise of the
power unless there is something in the gift of the power to justify
the delegation. Per PIERCE, J.

TWO BILLS IN EQUITY for instructions, filed on March 27,
1934, one in the Supreme Judicial Court for the county of
Suffolk and the other in the Supreme Judicial Court for the
county of Middlesex, and each afterwards amended.

The suits were consolidated and were referred to a mas-
ter. Material facts found by the master are stated in the
opinion. By order of *Pierce*, J., an interlocutory decree

confirming the master's report was entered. The single justice then reserved the suits for determination by the full court.

*R. W. Hardy*, stated the case.

*N. Morss*, for Miles Washburn Weeks and another.

*W. D. Turner*, for Frances Carruth Prindle and others.

*M. F. Weston*, for Rhode Island Hospital Trust Company, executor, and others.

PIERCE, J. These two cases were consolidated for trial and were reserved for the full court upon the pleadings, the master's report and the interlocutory decree confirming the same. There were no objections to the master's report or to the confirmation thereof. Each case is a bill in equity for instructions. The same trust company is the plaintiff in both cases. In the Suffolk case the plaintiff is trustee under a trust indenture, dated August 2, 1918, from one Tripp, who conveyed as a "straw" for Antoinette H. Saville. In the Middlesex case the plaintiff is trustee under the will of Antoinette H. Saville. The issues in the two cases are practically identical. The ultimate question in each case is whether Henry Martyn Saville, son of said Antoinette H. Saville, by his last will executed certain powers of appointment conferred upon him by said deed and will.

The portion of said trust indenture material to the case at bar gave to Henry Martyn Saville the power to appoint one half of the principal of the property under the trust "to those persons whom the said Henry Martyn Saville shall appoint by his last will, and in default of such appointment said one half of said principal shall be paid over as follows: — a. One half thereof to those persons who would have been entitled to the personal estate of the said Antoinette H. Saville under the laws of the Commonwealth of Massachusetts then in force, if she had died intestate immediately after the death of the survivor of said Henry and Emily [wife of Henry and also a life beneficiary]." By subsection "b" a similar disposition, in default of appointment, was made as to the remaining half of the above mentioned property to those who would have been entitled to the personal

estate of her husband Dr. Henry Martyn Saville if he had similarly died intestate. By her last will, dated January 22, 1916, the said Antoinette bequeathed to the plaintiff, as trustee, other property, with a power of appointment to said Henry Martyn Saville upon terms similar to those above set forth.

Antoinette H. Saville died October 29, 1928. Her husband, Dr. Saville, had died before her. Her son Henry Martyn Saville died September 26, 1933, a resident of Providence, Rhode Island, leaving a will which has been duly proved and allowed in Rhode Island, and in which the Rhode Island Hospital Trust Company is named as executor. This company has been appointed and has duly qualified as such executor. The question is whether the powers of appointment were exercised by any of the following clauses of the will of Henry Martyn Saville, and, if so, by which clause.

The fourth clause of said will reads: "I direct and authorize my said executor to set aside the sum of one hundred thousand dollars ($100,000) and to divide the same into ten equal portions of ten thousand dollars ($10,000) each, and to dispose of said one-tenth portions as follows: (a) From the first of said portions I direct my said executor to pay the following legacies: — (1) To the Domestic and Foreign Missionary Society of the Protestant Episcopal Church in the United States of America, the sum of one thousand dollars ($1,000)." Then follow legacies to churches, cousins (including Mabel D. Burnham and Frank W. Burnham), other relatives, clergymen, both at home and abroad, certain named young people, and a direction to his executor to purchase books with funds from his residuary estate. The bulk of the $100,000 is left to the younger members of the Burnham and Grainger families and Richard P. Breaden, some of these legatees to take outright and others to take as beneficiaries of the trusts set up by the will. The eighth clause reads: "All the rest, residue and remainder of my real estate, wherever situate, of which I shall die seized, possessed, or entitled, or as to which I shall have the power of disposition or appointment at the time

of my decease, I give, devise and bequeath in equal shares
to the children of my said cousin, Frank W. Burnham, and
to the children of my sister in law and cousin, Anna H.
Grainger, to have and to hold to them, their heirs and
assigns, forever." The ninth clause of the will reads: "All
the rest and residue of my personal property remaining
after the specific bequests included in this will and also in
the said memorandum [described in the third clause of the
will], I give and bequeath to the oldest living child of my
cousin, Frank W. Burnham, and to the Reverend William
Grainger of said East Hampton, New York, (or in case he
shall not survive me, then to his oldest living child), to be
divided equitably among the members of said two families
as they may in their uncontrolled discretion decide."

The master made findings with reference to the testator's
situation at the time of the execution of the will and there-
after, as follows: The plaintiff, who was the trustee of the
*inter vivos* and testamentary trusts set up by Antoinette H.
Saville, was also the custodian of the testator's own funds.
About the date of the execution of the will the testator's
own separate property was worth about $51,000, the prop-
erty over which he had power to appoint under the *inter
vivos* trust was about $54,000, and that under the testa-
mentary trust between $8,000 and $12,000. These proper-
ties had greatly depreciated in value at the date of the tes-
tator's death. "Mr. Saville sometimes spoke of property
as his own when in fact the principal was subject only to
his power of appointment. He spoke of himself, for ex-
ample, as worth $150,000 at a time shortly after the estab-
lishment of the . . . [trust of August 2, 1918 and another
trust, of August 1, 1918] and with direct reference to these
trusts. At that time he was an income beneficiary of the
trust of August 1, 1918, but had no right presently to
receive principal, while under the trust of August 2, 1918,
he had no present income and only a power to appoint
principal. Again in 1928 when his mother died Mr. Saville
spoke of having 'inherited' one-half of her property when
in fact her will gave him only income for life with power
to appoint at death." Just prior to the execution of his

will, on February 5, 1930, he wrote to the present plaintiff requesting information as to "Just what are the two amounts of my principal now — the one in trust and the other free? I want to make out a new will soon." The plaintiff answered this letter, in part, as follows: "The trust for your benefit under Mrs. Saville's will is soon to be set up, as you know, and we shall transfer the sum of $8,000 to that trust. Perhaps with other property belonging to the estate including the amounts still to be received from Mr. Bowen, this trust will amount to about $12,000. You will have power to appoint in your will the principal of this trust fund. The present market value of the share over which you will have power of appointment in the trust fund under the indenture of August 2, 1918 is approximately $54,000. We hold as custodian for you securities having an approximate value of $50,000." The master found in substance that the degree of intimacy of the testator with any of his relations by blood or marriage was not unfriendly but found that "his principal and most intimate relations, especially during the later years of his life and at and around the time of the making of his will, were with the Grainger and Burnham families and especially with members of the younger generation."

It is plain and, as we understand the briefs, all parties in interest concede, that the validity of the appointments under both the deed of August 2, 1918, and the will of Antoinette H. Saville is governed by the laws of the Commonwealth of Massachusetts, notwithstanding the donee of the power was a nonresident. *Sewall* v. *Wilmer,* 132 Mass. 131. *Tudor* v. *Vail,* 195 Mass. 18. *Russell* v. *Joys,* 227 Mass. 263. *Bundy* v. *United States Trust Co. of New York,* 257 Mass. 72. A similar rule obtains in Rhode Island. *Rhode Island Hospital Trust Co.* v. *Dunnell,* 34 R. I. 394. A general devise of all one's property is presumed to include property over which he has a general power of appointment unless the contrary appears from the will. *Amory* v. *Meredith,* 7 Allen, 397. *King* v. *Walsh,* 250 Mass. 462, 466. *Harvard Trust Co.* v. *Frost,* 258 Mass. 319. It follows that a testator's declarations of intention are inadmissible,

*Saucier* v. *Saucier*, 256 Mass. 107, *Calder* v. *Bryant*, 282 Mass. 231, and if admitted the evidence respecting them must be disregarded. *Saucier* v. *Saucier*, 256 Mass. 107. But all the circumstances existing and known to a testator, and the fact of his knowledge of them, may be shown and considered. *Morse* v. *Stearns*, 131 Mass. 389. It is settled that a testator's conduct and even his declarations may be shown when they are offered, not as direct proof of his intention, but to show facts relevant to his knowledge, state of feelings toward or relation to the claimants. *Morse* v. *Stearns*, 131 Mass. 389. *Calder* v. *Bryant*, 282 Mass. 231, 235. Applying these rules to the instant case it was competent to show the testator's knowledge of the nature and scope of his property and of the fact that his estate was being diminished by the expenditure of principal. *George* v. *George*, 186 Mass. 75, 78. It was also permissible to show the varying degrees of intimacy involved in his relations to the principal beneficiaries of the will, on the one hand, and the takers in default of appointment, on the other. *Buckley* v. *Gerard*, 123 Mass. 8, 11. Evidence was also admissible to prove that shortly before making his will he took pains through correspondence with the plaintiff to know how much property there was, to verify the existence of the power of appointment, and to show that he had in mind that he possessed such a power when he executed his will, to enable the court to ascertain as nearly as possible with what purpose the words of the will were employed. *Polsey* v. *Newton*, 199 Mass. 450, 453.

It is convenient to begin with a discussion of whether the powers of appointment were exercised in the ninth clause of the will, and then to consider whether the powers were exercised by the fourth clause giving pecuniary legacies. As above stated, "It is settled in this Commonwealth that 'a general power of appointment is well executed in the absence of anything to show a contrary intention by a general residuary clause in the will of the donee.'" *Worcester Bank & Trust Co.* v. *Sibley*, 287 Mass. 594, 598. It is also settled in this Commonwealth, *prima facie*, that a person with a power of appointment is not entitled to dele-

gate the exercise of the power unless there is something in the gift of the power to justify the delegation.   *Sells* v. *Delgado,* 186 Mass. 25.   *In re Mewburn's Settlement,* [1934] Ch. 112, 116.   In the instant case there is nothing in the trust indenture or in the will of Antoinette H. Saville to indicate that she intended that the granted powers should be exercised by any one other than her donee.   The testator Henry Martyn Saville plainly knew the legal distinction between his own property and the property over which he had by virtue of the powers of appointment the right of disposition by will. This knowledge and the fact that he had the distinction in mind when he executed his will are shown by his letter to the plaintiff, and by the eighth clause of his will wherein he says "All the rest, residue and remainder of my real estate, wherever situate, of which I shall die seized, possessed, or entitled, or as to which I shall have the power of disposition or appointment at the time of my decease, I give . . . ."   The use of the conjunction "or" shows that he did not class property which he could appoint with property in which he had title, possession or enjoyment. It is true that the testator had no real estate not specifically devised and that there was none then in trust, and it is equally true that the testator manifestly had an intent by the eighth clause not to include appointable property with his own property but to mention it specifically when it was to be dealt with.   This careful distinction between the property of the testator and the property over which he had power of appointment is implied in determining what effect is to be given to the ninth clause, which has no reference whatsoever to any power of appointment.   If the testator had intended the ninth clause to include appointable property, it is more than inferable that he would have used the same technically accurate language he used for the purpose in the eighth clause.   It is suggested, not without reason, that the ninth clause was intended not as a general residuary bequest of personal property, but only as a gift of such tangibles as had not been specifically bequeathed; but even if the clause is adequate to dispose of surplus intangible personal property, the nature of the

clause indicates that its primary purpose was to take care of odds and ends of tangible effects, and the contention that it was never intended as an exercise of the powers of appointment is strongly supported by that fact.

We think it is plain that a power of appointment is not exercised by a legacy of a sum of money either in the presence or in the absence of a general residuary clause in a will. The fact that the property of Henry Martyn Saville was insufficient to discharge the legacies bequeathed in the fourth clause of his will was at most a mere circumstance bearing upon the intent of the testator to include the trust property over which he had the powers of appointment in the assets of his estate. But that fact does not have the effect of the exercise of the powers by implication.

We think the powers of appointment were not exercised by clause ninth or fourth of the will, and that there is nothing in the facts to justify a finding that the powers were exercised by the provisions of the will when considered as a whole.

It follows that the plaintiff, trustee under the trust indenture dated August 2, 1918, is instructed that the power of appointment set forth in the sixth paragraph of said indenture was not exercised by the will of Henry Martyn Saville under article fourth or ninth of his will or by the whole will, and that it should forthwith pay over the trust fund to those persons who take in default of appointment under the sixth paragraph of said indenture. It further follows that the plaintiff, trustee under the will of Antoinette H. Saville, is instructed that the power of appointment set forth in article sixth of said will was not exercised by the will of Henry Martyn Saville under article fourth or ninth of his will or by the whole will, and that it should forthwith pay over the trust fund to the persons who take in default of appointment under said will. That is, in each case (1) Emily Frances Dix, a sister of Antoinette H. Saville, should receive two twelfths of the trust fund; (2) Frances Carruth Prindle and Edith Carruth Lawrie, daughters of a deceased brother, should each receive one twelfth of the trust fund; (3) Paul Washburn, a son, and Miles

Washburn Weeks, a grandson, of a deceased sister, each should receive one twelfth of the trust fund; and (4) Mabel D. Burnham and Frank W. Burnham, sole living personal representatives of Henry Martyn Saville, husband of Antoinette H. Saville, should each receive three twelfths of the trust fund. In the discretion of the single justice the defendants may receive from the fund costs taxed as between solicitor and client.

*Ordered accordingly.*