B. DEVEREUX BARKER & another, trustees, *vs.* GEORGE GARDNER MONKS & others.

Suffolk.   January 8, 1942. — March 3, 1944.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Devise and Legacy,* Remainder, Time of vesting, Determination of class, Life estate. *Trust,* Termination, Distribution, Trustee's compensation and expenses. *Words,* "Shall make over and convey," "Then."

Under provisions of the will of one who died leaving unmarried children, establishing a trust of all the testator's property to pay the income to the children and others "until the decease of all my children, I then order and direct that my trustees . . . shall make over and convey all my estate equally to my grandchildren," each grandchild at birth took a vested remainder interest subject only to later born grandchildren being admitted to such class of remaindermen; and, upon the death of the survivor of the children, the capital should be equally divided among the then living grandchildren and the estates of those deceased.

A will, directing that the income of a trust fund should be divided among the testator's children during their lives, "and in case of the decease of any child . . . the share of such child shall go to his or her child or children (if any) otherwise shall be divided between my surviving children as aforesaid until the decease of all my children," gave to a grandchild of the testator who was the only child of a deceased child and who himself predeceased the survivor of the children an interest per autre vie in the share of the income formerly payable to his parent; and the estate of the grandchild was entitled to such share of the income from the time of the grandchild's death to the time of the death of the survivor of the children.

Upon a petition by a trustee under a will for instructions as to the final distribution of the trust fund at the termination of life interests, where it appeared that other pending litigation, to which the trustee was a party, involved a controversy as to claims against a share of the trust fund determined to belong to one of the respondents in the proceeding for instructions, this court ordered a decree permitting the trustee to withhold that share until the conclusion of the pending litigation

or like litigation that might thereafter arise, and directing distribution of the other shares.

A trustee seeking instructions as to the final distribution of the trust fund, upon being instructed to divide it into certain shares and to distribute all of them except one which he was permitted to withhold pending the outcome of other litigation as to the persons entitled to receive that share, was also instructed that before making distribution he should deduct from the trust fund his proper charges for services and expenses incurred with respect to the administration of the fund as a whole, but that his charges and expenses incurred in connection with the litigation respecting the share withheld, to which he was a party, should be borne solely by that share.

PETITION, filed in the Probate Court for the county of Suffolk on October 21, 1940.

The case was heard by *Dillon*, J.

*B. D. Barker*, stated the case.

*R. E. Goodwin*, (*M. F. Hall* with him,) for Donald J. Hurley, administrator, and others.

*C. B. Rugg*, (*S. Bradford & P. Shuebruk* with him,) for Mary F. Bradford and others.

*H. S. Avery*, (*W. E. Doherty, Jr.*, with him,) for Antoinette G. Monks.

*M. A. Shattuck*, (*J. F. Farr & S. Macmillan* with him,) for Archibald G. Monks.

*C. M. Davenport*, for Marion C. Monks Chase.

*C. L. Bremer*, for Robert Hempel.

*C. W. Oberdorfer*, for Caroline T. Monks, submitted a brief.

DOLAN, J.   This is an appeal from a decree entered upon the petition of the trustees under the will of John P. Monks, late of Boston, deceased, praying for instructions as to the distribution of the trust estate held by them under the will of the deceased.

John P. Monks, the testator, died on December 11, 1859. His will was executed on November 2, 1859, and a codicil thereto on November 26, 1859.   In the past this court has had occasion to decide various matters relative to the administration of the trust estate created by him.   See *Monks v. Monks*, 7 Allen, 401; *Monks v. Bradford*, 248 Mass. 296. In neither of those cases, however, was the issue now before us presented for determination.

Under the will of the testator he provided in part and most pertinently as follows: "I give devise and bequeath to my said trustees all my estate real and personal of every sort and kind in trust, that said trustees shall soon as convenient convert my personal estate, into money and to manage and take care of according to their best ability and skill my real estate, repairing leasing letting and if necessary rebuilding, and receiving the income thereof and to apply said income together with the proceeds of my personal estate in the first place to payment of expences in management and repairs thereof secondly to pay from said income to my mother Mrs. Margaret Monks of said Boston widow, eight hundred dollars pr year during her life. I direct said trustees if they think best to pay as a part of said eight hundred dollars yearly, the rent of the house in which my mother shall live I direct said trustees to pay from said income to my sister Bridget Monks of New York single woman three hundred dollars pr year during her life and the remainder of the net income of my said estate I direct my trustees to pay yearly one third part thereof to my wife Delia T. Monks during her life, and the other two thirds to all my children equally to be divided including said Richard J. Monks to their sole and separate use, during their lives, and if my wife shall die before my children then her third of said income shall go equally to said children in manner afore expressed and after the decease of my mother and sister then their shares shall be divided as afore mentioned amongst my children and in case of the decease of any child or children of mine the share of such child shall go to his or her child or children (if any) otherwise shall be divided between my surviving children as aforesaid until the decease of all my children, I then order and direct that my trustees or trustees for the time being shall make over and convey all my estate equally to my grandchildren." The codicil to the will provided for the treatment of certain inter vivos transfers to three of the testator's children as advancements, his expressed wish being that all of his children should share equally in the division of the income from his estate. At the time of the execution of his will

the testator had seven children, two of whom were by his first wife who had deceased. They were all unmarried and survived the testator, as did his second wife, his mother and his sister. Six of the children later married, and of these five had children. The last of the surviving children (Louisa D. Monks Hempel) died on December 9, 1939, the mother and sister of the deceased having died in the meantime; and the trust terminated. At the death of the last survivor of the children of the testator eight of his grandchildren were then living, eight other grandchildren having died in the meantime. Of the eight surviving grandchildren three had issue living, and of the deceased grandchildren two had issue living. The other six deceased grandchildren died without issue; of this group four died in infancy and two lived to majority.

In the court below the judge decreed that the principal of the trust estate, with accumulations and unpaid income therefrom, be divided and distributed in equal shares among the eight grandchildren of the testator who were living on December 9, 1939, the date of death of the last survivor of his children, or paid over to their legal representatives. The principal question to be decided is whether the corpus of the trust estate is to be divided and distributed equally into eight, sixteen or twelve parts. Those who contend that distribution should be made in twelve shares base their contention upon the fact that twelve grandchildren survived their parents, although only eight were alive at the death of the last life beneficiary.

The decision must rest upon the application of canons long since established for the construction of wills. They have been set forth in many prior decisions of this court. The basic rule is that the intent of the testator is to be gathered from the reading of the will as a whole in the light of the circumstances known to the testator and attendant upon its execution, and that, when his intent is so ascertained, it must be given effect unless some positive rule of law forbids. *Minot* v. *Amory*, 2 Cush. 377. *Bamford* v. *Hathaway*, 306 Mass. 160. *Boston Safe Deposit & Trust Co.* v. *Doolan*, 307 Mass. 233, 237. *Boston Safe Deposit &*

*Trust Co.* v. *Park,* 307 Mass. 255, 259. This intention is to be sought in the will as a whole, and cannot rest on intention alone in the absence of words in the will as a whole in the light of the attendant circumstances. *New England Trust Co.* v. *Berry,* 310 Mass. 35.

It is settled that the law favors the earliest vesting of estates, and that it will construe them as vested at the time of the death of the testator unless a contrary intention on the part of the testator is made to appear. *Dingley* v. *Dingley,* 5 Mass. 535, 537. *Bosworth* v. *Stockbridge,* 189 Mass. 266, 267–268. *Minot* v. *Purrington,* 190 Mass. 336, 338. *Blume* v. *Kimball,* 222 Mass. 412, 414. *Richardson* v. *Warfield,* 252 Mass. 518, 521. *Old Colony Trust Co.* v. *Brown,* 287 Mass. 177, 179. *Second National Bank* v. *First National Bank,* 289 Mass. 368, 373–374. *Cotter* v. *Cotter,* 293 Mass. 500, 503. *Boston Safe Deposit & Trust Co.* v. *Park,* 307 Mass. 255, 261. See Simes, Future Interests, § 348. This is especially so where the remaindermen are children or descendants of the testator. *Boston Safe Deposit & Trust Co.* v. *Nevin,* 212 Mass. 232, 237–238. *Richardson* v. *Warfield,* 252 Mass. 518. *Old Colony Trust Co.* v. *Brown,* 287 Mass. 177, 179. *Lyons* v. *Lyons,* 313 Mass. 550. In the light of this policy we must examine all of the various factors here involved, the instrument as a whole and its general scheme, in order to ascertain whether any of these elements militate against a construction of vesting of an interest in a grandchild of the testator upon birth, subject of course to be partially divested by the subsequent births of other grandchildren.

In support of the claims of the eight grandchildren living when the trust terminated, the dominant note of equality of treatment of the testator's children with respect to income is stressed (see in this regard *Monks* v. *Monks,* 7 Allen, 401, 406; *Monks* v. *Bradford,* 248 Mass. 296, 298), and it is argued that to construe the remainder interests as vesting on the birth of grandchildren would violate this intention, because certain of the testator's children, by virtue of out-living their children who have died without issue, would thus succeed to remainder interests not enjoyed by others

of the testator's children, with the result that the dominant principle of equality for his children shown by the will of the testator would be destroyed. But it is settled that a life beneficiary may also have a vested interest in remainder, though he may not presently, that is, in life, enter into possession and enjoyment. *Jewett* v. *Jewett*, 200 Mass. 310, 317. *Blume* v. *Kimball*, 222 Mass. 412, 414. *Brown* v. *Spring*, 241 Mass. 565, 568. *Hedge* v. *State Street Trust Co.* 251 Mass. 410, 413. *Crowell* v. *Chapman*, 257 Mass. 492, 498. *Old Colony Trust Co.* v. *Sullivan*, 268 Mass. 318, 320. *Gilman* v. *Congregational Home Missionary Society*, 276 Mass. 580, 584. *Old Colony Trust Co.* v. *Clarke*, 291 Mass. 17, 21. In the light of circumstances hereinafter discussed, we think that the fact that otherwise some life beneficiaries might also in the course of subsequent events prove to be entitled to vested remainders does not in the present case require the conclusion that the vesting of the remainders should be construed as postponed until the death of the last surviving life beneficiary.

Much stress has been placed upon the fact that, in directing the distribution of the trust estate upon the death of the last life beneficiary, the testator has used the words "shall make over and convey." This raises the question of interpretation of the so called "divide and pay over" rule. The essence of this rule seems to be that the use of such words or of those of similar portent is some indication of an intention on the part of the testator that vesting is to take place at the time fixed for ultimate distribution. But courts that purport to adhere to this rule really give it little weight in the actual decision of concrete cases. See Am. Law Inst. Restatement: Property, § 260; Simes, Future Interests, § 394. We are of the opinion that the rule is not decisive in the present case. See *Welch* v. *Blanchard*, 208 Mass. 523, 527; *Brown* v. *Spring*, 241 Mass. 565, 568; *Second National Bank* v. *First National Bank*, 289 Mass. 368, 373–374. Nothing in *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, 261, is in conflict with this view. Nor is *Crapo* v. *Price*, 190 Mass. 317, 321–323, relied upon by certain of the respondents, in conflict with what we have

said.   In that case some weight was apparently given to the words "pay, distribute and divide," but other factors were involved.   There the remaindermen were not relatives of the testator, there were no words of present gift, and as certain of the remaindermen could not be ascertained until the termination of the life interests, it could be inferred that all were to be determined as of that time.   See also *Welch* v. *Williams,* 237 Mass. 373, 375–376.   And it must be kept in mind that where, as in the instant case, the gifts are to descendants of the testator, the law will, if possible, construe them as vested.   That the gifts were to strangers in the *Crapo* case was accorded great weight by the court (190 Mass. 317, 320–321).   See *Whitman* v. *Huefner,* 221 Mass. 265, 268.

Certain of the respondents stress the word "then" as used in the will of the testator, as follows, "I then order and direct that my trustees . . . make over and convey . . .," contending that the use of the word "then" manifests an intention on the part of the testator to postpone vesting until the time for distribution.   The word "then" (and similar expressions) when used in the present connection is ordinarily held to have been used as fixing the time when the estate bequeathed or devised was to be distributed and was not used by way of description of the persons who were to take.   *Dove* v. *Torr,* 128 Mass. 38, 40.   *Porter* v. *Howe,* 173 Mass. 521, 528.   *Brown* v. *Spring,* 241 Mass. 565, 568. *Hedge* v. *State Street Trust Co.* 251 Mass. 410, 413.   *Gilman* v. *Congregational Home Missionary Society,* 276 Mass. 580, 584–585.   See *Pike* v. *Stephenson,* 99 Mass. 188 (in the event of her decease); *Marsh* v. *Hoyt,* 161 Mass. 459, 461 (to take effect at her decease).   Compare *Olney* v. *Hull,* 21 Pick. 311, 314–315 ("then shall be equal divided among my surviving sons"); *Harding* v. *Harding,* 174 Mass. 268, 271 ("then, and not til then"); *Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35, 38–40.

Some of the respondent appellants maintain that the instant case is governed by *Hale* v. *Hobson,* 167 Mass. 397. We think that case is distinguishable.   That case had already come before the courts of New York where it had

been held that the remainders were not vested but contingent. *Hobson* v. *Hale,* 95 N. Y. 588. This court had in mind when the case was before it the confusion that would result from a contrary decision here. Again, the residuary estate there involved, due to provisions relative to accumulated income, could not be determined finally until the decease of the life beneficiaries. And, finally, most of the gifts were prefaced by words of present gift though no such words were used in disposing of the residue. From these and other factors this court spelled out an intention that the remainders be contingent until the time of distribution. On materially dissimilar facts we do not reach that conclusion in the present case. A positive element favoring early vesting in the present case is found in the absence of any provision for gifts over after the remainders. *Marsh* v. *Hoyt,* 161 Mass. 459, 461. See *Boston Safe Deposit & Trust Co.* v. *Park,* 307 Mass. 255, 261; Am. Law Inst. Restatement: Property, § 255; Simes, Future Interests, § 368.

It follows from what has been said that the remainders are to be construed as vesting in the grandchildren of the testator at birth, subject to admit to the class thereafter born grandchildren. This construction is, we think, in accord with the intent of the testator. *Marsh* v. *Hoyt,* 161 Mass. 459, 461. *Manning* v. *Manning,* 229 Mass. 527, 531. It violates no positive rule of law, and is consistent with the law as it existed, which must be taken to have been known by the testator when he executed his will. *Wight* v. *Shaw,* 5 Cush. 56, 60–62. *Weston* v. *Foster,* 7 Met. 297, 300. *White* v. *Curtis,* 12 Gray, 54. See *Heard* v. *Hall,* 16 Pick. 457, 459. Divergent facts and circumstances distinguish such cases as *Eager* v. *Whitney,* 163 Mass. 463, 465, *Anderson* v. *Bean,* 220 Mass. 360, 362, and *Boston Safe Deposit & Trust Co.* v. *Wall,* 234 Mass. 447, 451–452, relied on by counsel for the testator's grandchildren who survived the last life beneficiary.

The corpus of the trust estate together with income accumulated thereon since the death of the last survivor of the testator's children is to be divided into sixteen equal distributive shares, one share to be paid to each of the eight

surviving grandchildren of the testator, and one share to the legal representatives of each of the grandchildren who predeceased the last surviving child of the testator, except that the share that vested in the grandchild Allan B. Monks is to be dealt with in the manner hereinafter set forth.

At the time of his death (December 18, 1937) Allan B. Monks was a resident of the State of California. On December 19, 1930, he went through a marriage ceremony with one Antoinette Giraudo, at Yuma, Arizona, who claims his share. This ceremony was declared to be null and void and an instrument purporting to be his will which was offered for probate by her was disallowed by the California courts. An earlier will was then offered for probate and was allowed, but the petitioners are informed that an appeal from the judgment admitting that instrument to probate is pending. "On or about September 14, 1940, while an appeal from the foregoing Judgment and also the above described Civil Action No. 223 in the United States District Court for the District of Massachusetts [1] were both still pending, a second complaint was filed in said District Court by said Antoinette Giraudo Monks, being Civil Action No. 905, in which your Petitioners as Trustees of the Estate of John P. Monks are named as Respondents. In this suit the said Antoinette Giraudo Monks alleges that she is the widow of Allan B. Monks and in reliance upon the same instruments of assignment set forth in the prior complaint claims also as a creditor. In these two capacities, she alleges that she has a beneficial interest in the Trust Estate being administered by your Petitioners and seeks an interpretation of the Will of John P. Monks for the purpose of determining what share of the principal, if any, may be payable to the personal representatives of Allan B. Monks and prays

---

[1] On or about April 10, 1939, Antoinette Giraudo Monks brought civil action No. 223 in the District Court of the United States for the District of Massachusetts against the present petitioners and the ancillary administrator of the estate of Allan B. Monks, alleging that she was widow and a creditor of Monks and that he had given her as security for his indebtedness to her a chattel mortgage, an irrevocable power of attorney and an order on the present petitioners to pay to her his interest in the estate of John P. Monks, and seeking "an order for the payment to her of all the income payable to Allan B. Monks" between August 15, 1928, and April 10, 1939. — REPORTER.

that your Petitioners be ordered to pay over to her such share of principal together with all income which has accrued or shall accrue since April 10, 1939." A public administrator of the estate of Allan has been appointed in California, and an administrator of his estate has been appointed in this Commonwealth and is a party respondent. The latter urges not only that one sixteenth of the trust estate together with accumulation of income since the termination of the trust on December 9, 1939, is payable to the legal representatives of Allan but also that the judge erred in not decreeing that Allan had a vested interest in the income on his share from the date of his death in 1937 to the termination of the trust. The will expressly provides that, upon the death of any of the testator's children, his or her share of the income should go to his or her children (if any) until the decease of all the testator's children. We are of the opinion that this accumulated income is payable at the appropriate time to the legal representative of Allan's estate. His father having died leaving Allan as his sole child, he thus became entitled to the share of income that formerly was payable to his father. The surviving children of the testator were only to take the income formerly payable to a child who had deceased in case the deceased child left no children of his own. Upon the death of his father, Allan became vested with an estate per autre vie in the income in question, *Wade* v. *Wade*, 203 Mass. 1, 3; *Richardson* v. *Warfield*, 252 Mass. 518, 522; *Harrison* v. *Marden*, 298 Mass. 148, 150, 151, which passed upon his death to his legal representative. In view, however, of the pending litigation to which we have already made reference, and to which the petitioners have been made parties, we are of the opinion that they should be authorized to withhold payment of the share of Allan in the trust estate until final determination of the pending litigation. In the decree entered by the judge he authorized the petitioners to reserve a sum not exceeding $25,000 for a reasonable time "as a provision against the expenses incurred and to be incurred in litigation now pending, or subsequently instituted." We construe this to mean that the reservation is to be made from the

principal of the trust estate as a whole. So far as appears, the only litigation involved is that concerning the share of Allan. We see no good reason why that litigation should not be a charge at the appropriate time against that share which may be held by the petitioners until its determination in accordance with what we have already said. See *Bigelow* v. *Morong*, 103 Mass. 287, 290; *Fuller* v. *Trustees of Deerfield Academy*, 252 Mass. 258, 263. The trustees' charges for services and expenses in connection with the present proceeding and other services involving the trust estate as a whole should be made properly in their subsequent accounting. *Frost* v. *Hunter*, 312 Mass. 16, 22, and cases cited.

The decree entered in the Probate Court is reversed and instead a final decree is to be entered instructing the petitioners that, after deducting the petitioners' charges for services and for expenses incurred by them with respect to the administration of the trust estate as a whole, properly chargeable thereto, and of such costs and expenses as may be allowed in this proceeding, but not including charges for services rendered and expenses incurred in the litigation affecting the share of Allan B. Monks only, the principal of the trust together with income accumulated since the termination of the trust is to be divided into sixteen equal shares to be distributed one to each living grandchild of the testator and one to the legal representatives of each of the deceased grandchildren, provided, however, that the share of the deceased grandchild Allan B. Monks, together with the income upon his share that accrued from the date of his death to the date of the termination of the trust which vested in his estate, may be withheld by the petitioners until final determination of any litigation now pending or that may hereafter arise with respect to his share, or until the further order of the Probate Court, the expenses and charges in connection therewith to be borne by that share. The costs and expenses that were allowed in the decree entered in the Probate Court, now reversed, may be allowed in the final decree after rescript, as well as costs and expenses of this appeal, in the discretion of that court, out of the principal of the trust estate.　　　　　*Ordered accordingly.*