GEORGE B. UPHAM *vs* PAUL M. SISKIND, individually
and as trustee, & others.[1]

Middlesex.   December 17, 1982. — September 2, 1983.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Trust*, Distribution, Trustee's discretion, Construction.

A clause in a trust instrument dividing the trust property equally between
the donor's son and daughter, subject to an adjustment to offset the ef-
fect of preferential treatment of the daughter by the donor's husband,
was considered ambiguous by this court, and on the basis of certain ex-
trinsic evidence was interpreted as providing that the son's share was
to equal one half of the sum of the value of the property in this trust
and the value of property held in certain trusts established by the
donor's husband, one of them for the son's benefit, minus the value of
the property in the trust for the son's benefit. [596-599]

CIVIL ACTIONS commenced in the Middlesex Division of
the Probate and Family Court Department on April 30 and
July 14, 1981, respectively.

The cases were heard by *Ginsburg, J.*

*Keith L. Hughes* (*Paula V. Kaminow* with him) for the
plaintiff.

*Edward Notis-McConarty* for Margaret U. Ferris & others.

PERRETTA, J.   George Baxter Upham (Baxter) appeals
from judgments of the Probate and Family Court entered in
two actions for declaratory judgments consolidated for trial
and involving the interpretation of the provision disposing
of the residue of the Anita B. Upham Trust of January 16,
1970 (Anita's 1970 trust).[2]   Briefly, the provision in dispute

---

[1] Margaret U. Ferris, Patience Ferris Sandrof, Katharine Wright God-
dard, Pamela U. Barneby and Sarah E. Ferris.

[2] After George B. Upham commenced suit, Paul M. Siskind brought an
action for declaratory judgment or, in the alternative, for instructions
concerning his proposed exercise of a power of appointment.  The two ac-
tions have been consolidated.

divides the remainder of the trust property on the death of
Anita B. Upham (Anita) between her son Baxter and her
daughter Sarah U. Ferris (Sarah), who died after Anita in
1979. The clause also gives to Mr. Paul M. Siskind a power
of appointment to adjust the two initially equal shares of
Anita's 1970 trust remainder in a manner set out in the
disputed provision, in hope of resolving any conflict be-
tween Sarah and Baxter which existed as a result of prefer-
ential treatment of Sarah by their father, Anita's husband,
Preston Upham (Preston), who died in 1964. The conflict
now centers on whether the probate judge has correctly
construed the adjustment formula set out in Anita's 1970
trust. We agree with the probate judge's conclusion that
the clause in question is ambiguous; however we conclude
that the proposed adjustment is not consistent with Anita's
intent and reverse the judgments.

1. *Background.*[3]

Three children were born of the marriage between Anita
and Preston: Sarah, now deceased, who married and had
five daughters; Baxter, who married and has a son and a
daughter; and James, who is not involved in these actions.[4]

While Preston and Anita were living, Sarah resided near
them. During Preston's life, he made inter vivos gifts to
Sarah, the total amount of which is unknown. Baxter, who
was not close to Preston, resided in Europe. His visits with
his parents were only occasional, usually when he would
return to this country to obtain medical attention for his
daughter, who suffers from a crippling ailment. Baxter
described his relationship with his mother as good, and as
closer after Preston's death.

---

[3] Because we conclude that the trust is ambiguous and that the extrinsic
evidence accepted, but apparently not relied upon, by the probate judge
favors Baxter rather than supporting the probate judge's determination,
we do not answer Baxter's contentions to the effect that certain testimony
and documents were improperly received in evidence.

[4] James was given a sum of money by Preston during his lifetime in set-
tlement of any future claims he might make on his parents' estates.

By a declaration of trust dated April 7, 1959 (Preston's 1959 trust), Preston established a marital deduction trust, as well as six nonmarital deduction trusts. Specifically, Anita received a life estate in the marital deduction trust with a general testamentary power to appoint the principal. The remainder of the trust property, the nonmarital deduction portion, was divided into two equal shares: one for Baxter and the other further divided into five shares, one for the benefit of each of Sarah's five children. The income on Baxter's share was to be paid to him during his life.[5]

Upon Baxter's death, the remainder of his trust is to be divided among his and Sarah's issue in a manner which will result in the distribution of two-sevenths of his remainder to his issue and five-sevenths to Sarah's. (Hereafter, for convenience, this clause will be referred to as the distribution provision.) The remainders of the shares of Sarah's children are to remain in Sarah's line.

Baxter testified at trial that he complained to his mother, both before and after Preston's death, about Preston's preferential treatment of Sarah. Baxter also testified that he never discussed with Anita the distribution provision in Preston's 1959 trust, nor did Anita ever indicate to Baxter that she was aware of that provision. Baxter related that he discussed with Anita "the problem of the earlier gifts" to Sarah but that he "did not make specific requests for money or push the point," as he did not wish to hurt Anita. Moreover, Baxter had no idea of the total amount of Preston's inter vivos gifts to Sarah. Baxter described his conversations with Anita as of such a nature that Anita knew Baxter was "unhappy about the situation and that was based upon my father's earlier activity — acts, and this is the subject

---

[5] With respect to the trusts for Sarah's children and issue, the income is to be paid to any beneficiary under the age of twenty-five years as the trustees, in their discretion, deem necessary to the beneficiary's welfare. Upon attainment of age twenty-five, a beneficiary is entitled to receive a share of the trust income, and the trustees also have discretion to pay principal to a beneficiary for his or her welfare.

from time to time of different exchanges between us." Additionally, Baxter told Anita that it was his preference that any future gifts pass to him directly rather than in trust. Conversations of this nature continued right up to 1970, when Anita's 1970 trust was cast in the form as executed.

In the interim, sometime in 1967 or 1968, Anita, according to Baxter's testimony, asked Baxter to review her existing will and trust which had been prepared largely by Preston in 1959 and which disposed of her property in a manner she "suggested" might make Baxter "unhappy." Baxter reviewed the documents, and on August 21, 1968, Anita wrote to her attorney, Mr. Charles Wadsworth, now deceased. That letter reads in part: "Baxter has asked that I make certain changes in my will and trust." Anita authorized Mr. Wadsworth to speak with Baxter and to prepare "a draft which takes his views into consideration." Anita further stated in this letter that "I wish to act in this matter in such a way as to assure in so far as possible a friendly and happy relationship between my children." A new will was drafted and signed by Anita on August 29, 1968.

Mr. Samuel Newbury, Mr. Wadsworth's associate, testified that he met Anita in the fall of 1969 while working on her estate plan. He stated that neither he nor Anita was aware of the terms of Preston's trust. Mr. Newbury did not ascertain the amount of Preston's inter vivos gifts to Sarah, although Anita indicated that she believed her accountant could gather those figures.

At some point in the preparation of Anita's estate plan, it was determined that Anita could compensate for Preston's preferential treatment of Sarah over Baxter by giving him a fifty-five percent share of her (Anita's) estate to a forty-five percent share for Sarah. Mr. Newbury stated that Anita, however, "decided to reject this plan in favor of the fifty-fifty split." Anita's 1970 trust was then drafted, using Anita's 1968 will as the model. The crucial language of that will is set out in the margin.[6] As testified to by Mr.

---

[6] Article fourth of Anita's 1968 will provides, in pertinent part: "Since it is my desire that my son BAXTER . . . receive amounts as nearly as possi-

Newbury, "I can specifically recall . . . that the provision which I believe was in the 1968 will to effect distribution by the device of a special power of appointment granted to fiduciaries — I believe we addressed that as a vehicle or an instrument to accomplish distribution and that we in effect lifted it and copied it into the new instruments."

Anita's new estate plan consisted of a will, dated January 16, 1970, which contains a pour-over provision to Anita's trust of even date. Thus, we reach the disputed clause of that instrument, article second, paragraph (a), and we recite it in full:

> "(a) *Shares for Two Children:* The trust property shall be divided into two shares, one of which may be referred to as the share of the Donor's daughter, SARAH U. FERRIS (hereinafter 'SARAH'), and the other as the share of the Donor's son, GEORGE BAXTER UPHAM (hereinafter 'BAXTER'). These two shares of the trust property shall be equal in value, subject, however, to the following adjustment. *Since it is the Donor's intention that said BAXTER'S share shall be as nearly as possible equal to one-half the sum of the values of the property held in trust hereunder (including any property of the Donor and appointive property added hereto by her will) and the property held not subject to the Donor's power of appointment under the PRESTON UPHAM DECLARATION OF TRUST dated April 7, 1959, as amended,* the Donor hereby gives to [Paul M. Siskind[7]] the power to appoint

---

ble equal to one-half the sum of the values of my said residuary estate, the *trusts* established by the Preston Upham Declaration of Trust dated April 7, 1959 . . . and the trust settled by myself and known as the 'Anita B. Upham Declaration of Trust dated April 7, 1959' . . ., I give . . . the power to appoint the property passing under Article THIRD hereof by increasing the part of my residuary estate to said BAXTER or his issue to such amount or proportion as will accomplish or most closely approximate this desire" (emphasis supplied).

[7] Mr. Siskind was named successor trustee by a 1976 amendment to the declaration of trust.

the trust property by decreasing the said SARAH'S share and increasing the said BAXTER'S share to such an extent as will accomplish or most closely approximate this intention. In the exercise of this power, [Mr. Siskind] shall have sole and absolute discretion with respect to said values and to each and every question involved, and in the exercise of this power [he] shall be absolutely free from any liability whatsoever, saving only for abuse of discretion arising from bad faith." (Emphasis supplied.)

As of the date of Anita's death, June 12, 1979, the assets in her trust (including assets received from her executors and assets over which she exercised her power of appointment under Preston's 1959 trust, less taxes, debts, expenses, and specific bequests) were valued at $854,861. As of June 30, 1979, the value of the assets in the nonmarital deduction trusts established by Preston's 1959 trust was $1,000,655.[8]

2. *Baxter's Interpretation.*

Baxter argues that Anita's 1970 trust is not ambiguous and that her intention, clearly expressed, was that Baxter's share of her trust is to be "an amount equal to one-half the sum of the values of Anita's [1970] trust and Preston's [nonmarital deduction] trusts." If Baxter is correct, he would be entitled to an adjusted share of Anita's trust assets which would exceed the total assets under Anita's trust ([$854,861 + $1,000,655] ÷ 2 = $927,758), thereby causing, as a very real matter, Anita's disinheritance of Sarah's line.

---

[8] The specific values of the assets in each of the nonmarital deduction trusts under Preston's 1959 trust, rounded to the nearest dollar, are:

| | |
|---|---|
| George Baxter Upham: | $ 309,928 |
| Pamela U. Barneby: | 146,380 |
| Margaret U. Zimmerman (Ferris): | 132,777 |
| Katharine W. Goddard: | 105,075 (as of July 13, 1979) |
| Patience Ferris Sandrof: | 150,814 |
| Sarah E. Ferris: | 155,681 |
| | $1,000,655 |

### 3. *Mr. Siskind's Proposal.*[9]

Sarah's line argues that Anita's trust instrument itself and the extrinsic evidence (should we conclude, as we do, that paragraph [a] is ambiguous) show that "Anita intended that Baxter should receive from her trust and that of Preston combined property of value equal to that received by the Ferris line." Sarah's line, therefore, contends that the distribution calculated by Mr. Siskind is correct.

Mr. Siskind concluded that Anita intended to make an adjustment for the distribution provision in Preston's 1959 trust. He decided to value the remainder interest of the trust for Baxter's benefit as of the date of Anita's death. Arriving at the value of $126,271 by means not here important, Mr. Siskind concluded that Baxter's half of Anita's trust ($427,430) was to be increased, essentially, by the amount of the 1979 value of five-sevenths of the remainder interest ($427,430 + $90,194 = $517,624) and Sarah's share was correspondingly to be decreased ($427,430 − $90,194 = $337,236), thereby giving back to Baxter what Preston had taken from him, so to speak, to give to Sarah's line.

### 4. *The Probate Judge's Conclusions of Law.*

As stated in *Putnam* v. *Putnam*, 366 Mass. 261, 266-267 (1974): "The fundamental object in the construction of a [trust] is to ascertain the . . . [donor's] intention from the whole instrument, attributing due weight to all of its language, considered in light of the circumstances known to the . . . [donor] at the time of its execution, and to give effect to that intent unless some positive rule of law forbids. [Citations omitted.] If a will is not ambiguous, extrinsic evidence to explain its terms is inadmissible (*Moffet* v. *Heon*, 242 Mass. 201, 205 [1922]), even where the language involved has a legal consequence either not likely to have been understood by the . . . [donor] [citations omitted] or contrary to his intention expressed orally. [Citations omitted.] If, however, there is an ambiguity in a will, such as a conflict of terms, extrinsic evidence may be resorted to in order to show the circumstances known to the . . . [donor] under which he viewed that ambiguous language."

---

[9] Mr. Siskind's interpretation of Anita's 1970 trust and his proposed method of distribution thereunder appears in an attachment to his complaint for declaratory judgment or, in the alternative, for instructions.

The probate judge concluded that paragraph (a) is ambiguous and that the source of ambiguity appears in the italicized portion of the third sentence. See part 1 of this opinion, *supra.* In paragraph (a), Anita uses the word "share(s)" seven times. Baxter agrees that the word, with one exception, is employed in the sense of "unadjusted share." The exception exists in the first use of the word in the third sentence, where it clearly means "adjusted share." Were it otherwise, the sentence would be meaningless. Baxter, however, insists that there is an additional implicit modifier to the word "share," as there used, so that the phrase should be read as "said BAXTER'S [adjusted] share [hereunder]."

The probate judge concluded, however, and we think correctly, that Baxter's reading of an implicit "hereunder" following the words "said Baxter's share" ignores the facts that the word "share" is here, but nowhere else, used in the context of "adjusted share" and that the phrase opens with the word "[s]ince." Accordingly, we agree with the probate judge's conclusion that, as used for the first time in the third sentence, the word "share" refers to Baxter's portion of "the property in the Anita B. Upham [1970] Trust and the property in the Preston Upham [1959] Trust . . . rather than to the property in the Anita B. Upham Trust alone."

Having concluded that paragraph (a) is ambiguous, the probate judge ascertained Anita's intent without resort to extrinsic evidence and on the following basis. The probate judge viewed Mr. Siskind's power to appoint as broader than usual powers of trustees and as contemplating that he do more than the administrative task of valuing property. Moreover, the probate judge thought it arbitrary to determine a beneficiary's share by reference to the value of a separate fund over which a person has no control and which has changed in value from year to year. Further, the arbitrariness of such a scheme would be compounded by a "reverse type of incentive, or reward, with respect to the share of Sarah's line, to fail to conserve principal." Put another way, if the value of the property in the nonmarital

deduction trusts created by Preston were to be included in Anita's formula, Baxter would profit by any accumulation of income in those trusts by Sarah's line. Finally, the probate judge noted, if Baxter's share were to be increased by one half of the value of the property in the nonmarital deduction trusts, the "increases would be of a magnitude outside of the scope of the ordinary meaning of the word 'adjustment.'" Thus, the probate judge concluded that the inequality of treatment between Baxter's and Sarah's lines which Anita intended to remedy was the shift to Sarah's issue of five-sevenths of the remainder of Baxter's life estate.

If the extrinsic evidence were to be considered, the probate judge continued, it would support his conclusion. Specific reference is made to Anita's 1968 will and Mr. Newbury's testimony, which the probate judge paraphrased to mean that when the comparative amounts of Preston's inter vivos gifts to Sarah were not (or could not be) ascertained, Anita and her lawyers proceeded to draft the trust "without attempts to equalize such gifts."

5. *Resolution.*

As previously noted, we agree with the probate judge that paragraph (a) is ambiguous, but we conclude that Mr. Newbury's testimony and Anita's 1968 will show that Anita intended that Baxter receive from her an amount of money equal in value to one half the sums of the value of her residuary estate and of the nonmarital trusts created by Preston.[10]

Neither Mr. Newbury's nor Baxter's credibility is put in issue by the probate judge or the appellees. These witnesses did not contradict each other or the documentary evidence. Both Mr. Newbury and Baxter testified that when Anita's 1970 trust was drafted neither she nor Mr. Newbury was aware of the distribution provision of Preston's 1959 trust.

---

[10] While we are in fundamental agreement with Baxter's interpretation of paragraph (a) (see part 2, *supra*), we conclude that Anita did not intend to *duplicate* the benefits of Preston's 1979 trust, and our formula therefore differs from that proposed by Baxter.

And, although the amounts of Preston's inter vivos gifts to Sarah were never ascertained, we find nothing in Mr. Newbury's testimony which supports the probate judge's finding that Anita and her lawyers rejected attempts to equalize these prior gifts. Mr. Newbury testified that Anita's lawyers had determined that she could compensate for Pretson's preferential treatment of Sarah over Baxter by dividing her estate into two shares, fifty-five percent for Baxter and forty-five percent for Sarah. This proposal, as was previously observed, was rejected by Anita "in favor of the fifty-fifty split."

Mr. Newbury was quite specific that Anita's 1968 will served as a model, indeed was copied, albeit imperfectly, and grafted onto the 1970 estate plan, the will and pour-over trust. (Had the 1968 will been copied more faithfully, there would be no ambiguity, and, we think, the result we reach would have been obvious to all the parties.)

The 1968 will was intended to bridge the gap while Anita's estate plan was being formalized. It is appropriate in these circumstances to look to Anita's 1968 will, see *Taylor* v. *Albree*, 309 Mass. 248, 253-254 (1941); *Old Colony Trust Co.* v. *Attorney Gen.*, 316 Mass. 530, 532 (1944), as well as to the testimony to determine "the circumstances existing and known to [Anita], and . . . [her] state of feelings toward or relation to the claimants," *Boston Safe Deposit & Trust Co.* v. *Prindle*, 290 Mass. 577, 581-582 (1935), and "for the purpose of removing ambiguity and illuminating meaning or intention," *McKelvy* v. *Terry*, 370 Mass. 328, 334 (1976).

Considering the facts and circumstances in existence at the time Anita executed her trust in 1970, especially her lack of knowledge of the distribution provision provided for by Preston's 1959 trust and her awareness of Baxter's distress relative to Preston's inter vivos gifts to and preferential treatment of Sarah, we conclude that Anita intended that Baxter's share of her residuary estate be determined, in part, by the value of the property held in the nonmarital deduction trusts created by Preston.

Baxter argues that in determining the value of the "property held not subject to the Donor's power of appointment under" Preston's 1959 trust, the value of the trust for Baxter's benefit must not be taken into consideration. Anita's intent, however, was to equalize, not to duplicate.

We are also not persuaded that Mr. Siskind's power to appoint Anita's trust property is so broad as to validate his proposed method of distribution. Even though Mr. Siskind is to have "sole and absolute discretion" in determining the values of the residuary shares and "each and every question involved," his exercise of the power must be consistent with Anita's intent. Cf. *Boston Safe Deposit & Trust Co.* v. *Stone,* 348 Mass. 345, 351 & n.8 (1965). There is nothing in paragraph (a) of Anita's 1970 trust which suggest to us that Anita intended that Baxter's and Sarah's line should take distributive shares calculated on the basis of the value of less than all of the property in the nonmarital trusts funded by Preston. Cf. Restatement (Second) of Trusts § 347 (1957).

To the extent that is appears arbitrary that Baxter gains by any accumulation of income in the nonmarital deduction trusts by Sarah's line, it must be remembered that it is Anita's intent which controls. In carrying out that intent, Anita has not disturbed any of Preston's gifts, inter vivos or testamentary. She has merely taken them into consideration in providing for the distribution of her estate.

6. *Conclusion.*

The values of the shares of Baxter and Sarah's line are to be arrived at by the following formula: Baxter's share is calculated by taking one half the sum of the value of the property held in Anita's 1970 trust and in Preston's 1959 nonmarital deduction trust, less the value of the property in the trust held for Baxter's benefit ($\frac{1}{2}$ [$854,861 + $1,000,655] − $309,928 = $617,830). The share of Sarah's line is determined by decreasing the amount of one half the value of Anita's 1970 trust property by the amount of the difference between the

share of Sarah's line in that property and Baxter's share ($427,430 − [$617,830 − $427,430] = $237,030).[11]

The judgments are reversed, and the matter is remanded to the Probate and Family Court for the entry of judgments consistent with this opinion. None of the parties are to have costs of appeal.

*So ordered.*

---

[11] The figures used herein are those set out in the trial judge's findings of fact and are based upon values determined as of 1979. See note 8, *supra*. They are not to be viewed as controlling in further proceedings upon remand. See, e.g., *Boston Safe Deposit & Trust Co.* v. *Stone*, 348 Mass. at 349; *Pastan* v. *Pastan*, 378 Mass. 148, 154 (1979).